UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DAVID MERRITT FARSON,<br><br>Plaintiff,<br>v.<br><br>CITY OF LAKE STEVENS, et al.,<br><br>Defendants. | CASE NO. 2:22-CV-00405-LK<br><br>ORDER REGARDING PENDING MOTIONS |

This matter comes before the Court on pro se Plaintiff David Merritt Farson's complaint, Dkt. No. 1-2; Mr. Farson's Objection to Removal and Challenge to Jurisdiction, Dkt. No. 11; Mr. Farson's Motion for Summary Judgment, Dkt. No. 12; Mr. Farson's Objection To: Motion for Judgement Remains set for Determination, Dkt. No. 29; Mr. Farson's Motion to Sanction Forsberg & Umlauf, P.S. and Mark Dietzler, Dkt. Nos. 30, 34; Mr. Farson's Memorandum: Restatement of Amnesty and Sovereignty, Dkt. No. 31; Mr. Farson's Motion for Summary Decision to Remand Case Back to Snohomish Superior Court, Dkt. No. 32; Defendant Judge Amy Kaestner's Request for Dismissal, Dkt. No. 17; Defendant Zachor & Thomas, Inc., P.S.'s Motion for Judgment on the Pleadings, Dkt. No. 22; and the Lake Stevens Defendants' Motion to Dismiss, Dkt. No. 23. The

Court's ruling on these motions is as follows. Although the Court grants Mr. Farson leave to amend certain claims, some must be dismissed with prejudice because amendment would be futile. Only one of Mr. Farson's 22 claims is currently sufficient to survive the dismissal stage.

## I. INTRODUCTION

On the evening of February 24, 2019, Lake Stevens Police Officer Brandon Fiske stopped Mr. Farson's vehicle because it had a cracked windshield and was missing a valid license plate. Dkt. No. 1-2 at 5–6. Mr. Farson was traveling with his two teenage daughters. *Id.* at 5. When Officer Fiske asked for Mr. Farson's license, registration, and proof of insurance, Mr. Farson asserted that he was traveling pursuant to his "God-given unalienable right" and refused to incriminate himself. *Id.* at 6. Officer Fiske then ordered Mr. Farson out of the vehicle. *Id.* at 7. Mr. Farson refused to do so, told Officer Fiske to "step back," and "made repeated requests for a supervisor to be called[.]" *Id.* at 10. Officer Fiske radioed for backup and advised Mr. Farson that he would be arrested for interfering with an investigation if he did not exit the vehicle. *Id.* at 10–11.

When Mr. Farson again refused to comply, Officer Fiske opened the driver's side door and attempted to pull him from the vehicle. *Id.* at 11. Mr. Farson told Officer Fiske that he was "trespassing" and demanded an "articulable reason" for his arrest. *Id.* At some point during the fracas, Officer Neil Chad Wells arrived at the scene and joined Officer Fiske's efforts to extract Mr. Farson from the vehicle. *Id.* They eventually succeeded in dragging Mr. Farson out of the vehicle by his hair and left arm. *Id.* The officers then "threw Mr. Farson to the ground, tasered him twice, cuffed him, [and] with the weight of both officers[,] . . . pushed his face into the asphalt." *Id.* at 11–12. After Mr. Farson was "shoved" against Officer Fiske's patrol car, Officer Wells "gr[ou]nd his service boot into Mr. Farson's shoeless foot" and "proceeded to press Mr. Farson's face into the glass of the patrol car while making inflammatory comments[.]" *Id.* at 12.

Officer Robert Summers and Snohomish County Deputy Sheriff Jason Harris thereafter arrived on the scene. *Id.* at 12. So did Lake Stevens Fire Department paramedics, who removed the taser barbs from Mr. Farson and evaluated his condition. *Id.* Mr. Farson alleges that these paramedics found no signs of intoxication and recommended he be seen by a physician. *Id.* at 12–13. After the officers ascertained Mr. Farson's identity, they formally arrested him for Driving While Under the Influence, Failure to Identify Self to a Law Officer,[1] and Resisting Arrest. *Id.* at 16; *see* Dkt. No. 23-1 at 11–13; Wash Rev. Code §§ 46.61.502, 46.61.021(3), 9A.76.040(1). Officer Summers took notes while Officer Fiske advised Mr. Farson of his *Miranda* rights. Dkt. No. 1-2 at 16.

Once at the police station, Mr. Farson refused to take a breathalyzer. *Id.* at 19. Officer Fiske then applied for and obtained a search warrant to draw Mr. Farson's blood from Everett Municipal Judge Amy Kaestner. *Id.* Officer Fiske thereafter transported Mr. Farson to the hospital for a blood draw but did not "make any effort to have [him] seen by a physician as the [paramedics] had instructed." *Id.* at 19–20. Mr. Farson's journey ended at the Snohomish County Jail, where he allegedly presented his "bloody injured foot" to two "unnamed" officers and "requested medical assistance." *Id.* at 20. These officers eventually provided Mr. Farson with a paper towel when his complaints persisted. *Id.* Although Mr. Farson was "booked and fingerprinted" the following morning, another day passed before he was arraigned. *Id.* at 21–22. Mr. Farson pleaded not guilty to all charges and was released. *Id.* at 22–23.

On May 6, 2019, Zachor & Thomas (which contracted with the City of Lake Stevens to provide prosecution services in Mr. Farson's case) dismissed all charges without prejudice. *Id.* at 23; Dkt. No. 22 at 2–3; *see* Dkt. No. 23-1 at 15–16. Unfortunately for Mr. Farson, however, it

[1] Mr. Farson refers to this charge as "Failure to Comply." Dkt. No. 1-2 at 16.

reinstituted those charges in December 2019. Dkt. No. 1-2 at 24; *see* Dkt. No. 23-1 at 11–13. This time Mr. Farson accepted a plea deal. Dkt. No. 1-2 at 24.

On February 22, 2022, Mr. Farson filed this lawsuit in Snohomish County Superior Court alleging 22 claims against various defendants for violations of state and federal law. *See id.* at 1, 26–47. Snohomish County, the Snohomish County Jail, the Snohomish County Sherriff's Office, Snohomish County Sherriff Adam Fortney, and Snohomish County Deputy Sheriff Jason Harris (the "County Defendants") timely removed the case to federal district court. Dkt. No. 1. Mr. Farson objected to removal and moved for summary judgment on his claims against Judge Kaestner. Dkt. Nos. 11–12. Meanwhile, Zachor & Thomas answered Mr. Farson's complaint and moved for judgment on the pleadings. Dkt. Nos. 13, 22. Judge Kaestner similarly moved to dismiss Mr. Farson's claims against her. Dkt. No. 17. And the City of Lake Stevens, the Lake Stevens Police Department, Police Chief John Dyer,[2] and Officers Robert Summers, Brandon Fiske, and Neil Chad Wells (the "Lake Stevens Defendants") followed suit soon thereafter. Dkt. No. 23.

## II. DISCUSSION

The Court first addresses Mr. Farson's objection to removal. It then turns to Judge Kaestner's motion to dismiss, Mr. Farson's motion for summary judgment, Zachor & Thomas' motion for judgment on the pleadings, and, finally, the Lake Stevens Defendants' motion to dismiss.[3]

[2] Chief Dyer retired in August 2021 and was succeeded by Deputy Police Chief Jeff Beazizo.

[3] Mr. Farson moved to strike Judge Kaestner's Opposition to Plaintiff's Motion for Summary Judgment and Request for Dismissal. Dkt. No. 18 at 2–3. He claims that it is an inadmissible affidavit because attorney Ramsay Ramerman did not sign the document or provide a certification of truth under penalty of perjury. *Id.* at 2–3. However, the filing Mr. Farson challenges is not an affidavit; it is a brief in opposition to his motion for summary judgment and a motion to dismiss. And it complies with the requirements for opposition briefs and motions under Local Civil Rules 7(b)(1)–(2), 7(e)(3), 10(e), and 11(a). The Court therefore denies Mr. Farson's motion to strike. Dkt. No. 18 at 2–3. It also denies his motion to strike the County Defendants' Response to Plaintiff's Objection to Removal on the same basis. *See* Dkt. No. 19 at 2–3.

**A. Scope of the Record**

Mr. Farson did not file a timely response to either Zachor & Thomas' motion for judgment on the pleadings (noted for June 17, 2022) or the Lake Stevens Defendants' motion to dismiss (also noted for June 17, 2022). On August 24, 2022—over a month after the noting date for those motions—Zachor & Thomas filed a reply observing Mr. Farson's failure to timely respond and asking the Court to treat such failure as an admission. Dkt. No. 25; *see* LCR 7(b)(2). Mr. Farson immediately filed a joint "Notice to All Parties" and "Response to Zachor & Thomas Inc. Reply," in which he reiterated several arguments from his objection to removal and motion for summary judgment and—for the first time—responded to Zachor & Thomas' motion for judgment on the pleadings. *See* Dkt. No. 26. The Lake Stevens Defendants construed Mr. Farson's filing as a response to their motion to dismiss and filed a reply in support of that motion. Dkt. No. 27. They also moved to strike Mr. Farson's filing as untimely. *Id.* at 2; *see* LCR 7(g). In response, Mr. Farson filed another brief responding to the reply and once again reiterating his jurisdictional arguments. *See* Dkt. No. 28.

Local Civil Rule 7(b)(2) obligates a party opposing a motion to, "within the time prescribed in LCR 7(d), file . . . a brief in opposition to the motion." "[I]f a party fails to file papers in opposition to a motion" other than a summary judgment motion, "such failure may be considered by the court as an admission that the motion has merit." LCR 7(b)(2). Neither of Mr. Farson's filings explain his failure to file timely responsive briefs. Nor did he otherwise move for relief from the noting dates. *See* LCR 7(j). Mr. Farson also violated Local Civil Rule 7(g), governing the procedure for, and content of, surreplies. *See* LCR 7(g). The Court accordingly strikes Mr. Farson's filings. Dkt. Nos. 26, 28; *see Allstate Indem. Co. v. Lindquist*, No. C20-1508-JLR, 2020 WL 7075215, at *1 (W.D. Wash. Dec. 3, 2020) ("The Court has the discretion to strike untimely pleadings that fail to comply with local rules.").

**B. Mr. Farson's Objection to Removal**

The Court construes Mr. Farson's objection to removal as a motion to remand. *See* Dkt. No. 11 at 10 ("The case . . . must remain in Snohomish County."). He advances a series of convoluted arguments about sovereignty and contends that a "common law Court of Record" has jurisdiction over this action. *Id.* at 5. Mr. Farson also claims that removal from Snohomish County Superior Court conflicts with the Washington State Constitution and violates due process. *Id.* at 7–10. According to him, the County Defendants cannot "determine the venue" and the Snohomish County Superior Court must first decide the issue of jurisdiction. *See id.* at 8.

"Federal courts are courts of limited jurisdiction," *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), meaning "district courts may not exercise jurisdiction absent a statutory basis," *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). One such statutory basis is 28 U.S.C. § 1441(a), which permits a defendant to remove from state court any civil action over which a district court would have original jurisdiction. *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019). But there is a "strong presumption against removal jurisdiction" and the defendant "always has the burden of establishing that removal is proper." *Hunter v. Phillip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (cleaned up) (the district court resolves ambiguity in favor of remand). The County Defendants have met their burden here. As they point out, Mr. Farson has asserted claims under 42 U.S.C. § 1983 for violation of his federal constitutional rights—claims over which this Court has original jurisdiction. Dkt. No. 16 at 8–9; *see* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."); *see also, e.g.*, Dkt. No. 1-2 at 8, 13–14, 27–28, 36. And the Court may exercise supplemental jurisdiction over his related state law claims because they form part of the same case or controversy. Dkt. No. 16 at 9; *see* 28 U.S.C. § 1367(a) ("[T]he district courts shall have supplemental jurisdiction over all other claims that are

so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."); *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004) ("A state law claim is part of the same case or controversy when it shares a common nucleus of operative fact with the federal claims and the state and federal claims would normally be tried together." (cleaned up)).

To the extent Mr. Farson suggests that removal to federal court infringes on state sovereignty, interferes with the Snohomish County Superior Court's jurisdiction, or otherwise conflicts with his rights under the Washington State Constitution, the Court rejects such challenges. The Supreme Court has held that the removal statutes "must be construed as setting up [their] own criteria, *irrespective of local law*, for determining in what instances suits are to be removed from the state to the federal courts." *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 104 (1941) (emphasis added). Moreover, concerns about comity and federalism are subsumed in the presumption against federal court jurisdiction and the "near-canonical rule that the burden on removal rests with the removing defendant." *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006); *see also Healy v. Ratta*, 292 U.S. 263, 270 (1934) ("Due regard for the rightful independence of state government, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined.").

Contrary to Mr. Farson's arguments, then, the removal statutes grant the County Defendants some control over the forum in which his claims will be adjudicated so long as the controversy satisfies jurisdictional prerequisites (it does) and they abided by the statutory removal procedures (they did). *See Home Depot U.S.A.*, 139 S. Ct. at 1746 (removing defendants must comply with removal procedure). His related contention that the Snohomish County Superior Court must first pass on jurisdiction is likewise without merit. *See* 28 U.S.C. § 1446(d) (filing a notice of removal in district court, providing written notice to all adverse parties, and filing a copy

of the notice of removal in state court "shall effect the removal and the State court shall proceed no further unless and until the case is remanded"); *Roman Cath. Archdiocese of San Juan v. Acevedo Feliciano*, 140 S. Ct. 696, 700 (2020) (the state court loses jurisdiction upon removal and any subsequent proceedings are void).

Mr. Farson's final challenge to removal is procedural in nature. He argues that Judge Kaestner had not "joined in this action" at the time of removal and therefore did not consent to removal as required by statute. *See* Dkt. No. 11 at 6; Dkt. No. 19 at 3–4. Under 28 U.S.C. § 1446(b)(2)(A), "all defendants who have been properly joined and served must join in or consent to the removal of the action." As the statutory text indicates, however, only those defendants who have been properly served must consent to removal. The absence of a non-served defendant in a notice of removal does not render removal procedurally defective. *See Baiul v. NBC Sports*, 732 F. App'x 529, 531 (9th Cir. 2018); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193 n.1 (9th Cir. 1988).

Mr. Farson's procedural challenge to removal fails because he has not properly served Judge Kaestner. As a defendant sued in her official capacity only,[4] Judge Kaestner should be served through her employer. This is because the Court treats official capacity claims as claims against the entity that employs the official—here, the City of Everett. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity," and because "the real party in interest is the entity," a plaintiff seeking to recover damages "in an official-capacity suit must look to the government entity itself."); *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 n.55 (1978) ("[O]fficial-capacity suits

---

[4] *See* Dkt. No. 18 at 4 ("This case is not a case involving Amy Kaestner as a private person. It only involves the Judge as an active Judge."); Dkt. No. 12 at 2 (moving for summary judgment against Judge Kaestner "in her professional capacity"); Dkt. No. 1-2 at 36 (seeking judgment against Judge Kaestner "in her official capacity").

generally represent only another way of pleading an action against an entity of which an officer is an agent."). Under Washington law, Mr. Farson may serve the City of Everett only by delivering a copy of the summons "to the mayor, city manager, or, during normal office hours, to the mayor's or city manager's designated agent or the city clerk thereof." Wash. Rev. Code § 4.28.080(2). Federal Rule of Civil Procedure 4(j)(2) similarly directs that a plaintiff must serve a city by "delivering a copy of the summons and complaint to its chief executive officer" or by adhering to the procedure prescribed under state law, *i.e.*, Section 4.28.080(2). Mr. Farson did none of these things. *See* Dkt. No. 18 at 4; Dkt. No. 12 at 2–3 (alleging that Mr. Farson delivered "documents" to a clerk named "Brenda" at the Everett Municipal Court).[5]

When the County Defendants removed this case, neither Judge Kaestner nor the City of Everett had entered an appearance, and they had not been served. Thus, all properly served defendants consented to removal, as the County Defendants represented in their notice of removal. That is all Section 1446(b)(2)(A) requires. *See Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1225 (9th Cir. 2009) ("One defendant's timely removal notice containing an averment of the other defendants' consent and signed by an attorney of record is sufficient."); *see also, e.g.*, *Destfino v. Reiswig*, 630 F.3d 952, 957 (9th Cir. 2011) ("Because service on [certain] defendants was defective, their joinder in the petition [for removal] wasn't required."). The Court denies Mr. Farson's Objection to Removal and Challenge to Jurisdiction. Dkt. No. 11.[6]

---

[5] Mr. Farson's attempted service was also deficient under Federal Rule of Civil Procedure 4(c)(2), which provides that only a person who is at least 18 years of age "and not a party" may serve a defendant with a summons and complaint.

[6] Mr. Farson filed several additional documents advancing the same or similar arguments presented in his Objection to Removal and Challenge to Jurisdiction: (1) an "Objection To: Motion for Judgement [sic] Remains set for Determination," Dkt. No. 29; (2) a "Motion to Sanction Forsberg & Umlauf, P.S. and Mark Dietzler," Dkt. No. 30; (3) a "Memorandum: Restatement of Amnesty and Sovereignty," Dkt. No. 31; and (4) a "Motion for Summary Decision to Remand Case Back to Snohomish Superior Court," Dkt. No. 32. The first three are denied and the fourth is stricken.

Mr. Farson's "Objection To: Motion for Judgment" filing targets email correspondence between the Court's courtroom deputy and an attorney at Forsberg & Umlauf (all parties were copied on the correspondence), in which the attorney inquired about the status of defendant Zachor & Thomas' Motion for Judgment on the Pleadings. Dkt. No.

**C. Judge Kaestner's Motion to Dismiss**

Mr. Farson's sole claim against Judge Kaestner is an official-capacity claim involving her issuance of the blood-draw warrant. *See* Dkt. No. 1-2 at 4, 36 (Count 17). He claims that Judge Kaestner "authorize[d] an illegal search warrant" and did so without exercising sufficient "oversight of the process." *Id.* Mr. Farson further alleges that "[t]he system in place for Judge Kaestner to verify and sign search warrants is lacking necessary safeguards, enables fraud, and violates [his] constitutionally protected rights." *Id.* at 36. In terms of damages, he seeks judgment against Judge Kaestner "in the sum of $50,000 plus costs and interest" but is willing to accept a "written statement . . . that the Search Warrant of February 24, 2019, was faulty and was abused by the Prosecutor[.]" *Id.* Judge Kaestner urges the Court to dismiss Mr. Farson's claim "because [he] has not served the pending lawsuit on [her] and on the face of the Complaint, [she] is protected from [his] claim by absolute Judicial Immunity." Dkt. No. 17 at 1.

1. Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim in Count 17 – Issuance of Search Warrant

Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). At this stage, the Court accepts as true

---

29 at 1; *see* Dkt. No. 22. According to Mr. Farson, "all action is necessarily on hold" in this case and "[n]o further progress is permitted" because jurisdiction has not been established. Dkt. No. 29 at 2. He asks the Court to "remove" Zachor & Thomas' Motion for Judgment on the Pleadings "from being scheduled for determination." *Id.* at 4. For the reasons discussed above, defendants properly removed this case, and the Court has jurisdiction.

Mr. Farson's attendant motion for sanctions, Dkt. No. 30, as improperly amended 27 days later, Dkt. No. 34, dies on the same hill. He contends that sanctions against Forsberg & Umlauf are appropriate because Mr. Dietzler "deceiv[ed]" the Court and harassed him with "[m]ultiple [m]otions that admittedly are improper and out of order[.]" Dkt. No. 30 at 4. But this Court has jurisdiction over this action, and the complained-of conduct does not violate any Court rules or orders; indeed, it does not constitute misconduct at all.

Mr. Farson's "Memorandum"—to the extent it seeks affirmative relief—fares no better. This filing appears to be an amalgamation of arguments directed at asserting the sovereign immunity of Mr. Farson and Washington State. *See generally* Dkt. No. 31. Such arguments do not defeat the Court's jurisdiction for the reasons discussed above.

And last, the Court strikes Mr. Farson's "Motion for Summary Decision to Remand" as duplicative of Docket No. 11. This motion simply reiterates Mr. Farson's since-rejected jurisdictional challenges. *See generally* Dkt. No. 32.

all factual allegations in the complaint and construes them in the light most favorable to the nonmoving party. *Gonzalez v. Google LLC*, 2 F.4th 871, 885 (9th Cir. 2021). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Such statement must be "short and plain." Fed. R. Civ. P. 8(a)(2) (a plaintiff must make a "short and plain statement of the claim showing that [he] is entitled to relief"). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although "detailed factual allegations" are not required, a complaint must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555); *see also Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1145 (9th Cir. 2021) (conclusory allegations of law and unwarranted inferences will not survive a motion to dismiss).

Count 17 fails to meet this standard. First, any cause of action against Judge Kaestner in her official capacity must allege "official policy" as "the moving force of the constitutional violation in order to establish the liability of [the City of Everett] under § 1983." *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (cleaned up). A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents," *Monell*, 436 U.S. at 694, but "can be found liable under § 1983 only where the local municipality *itself* causes the constitutional violation at issue," *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *accord Gonzales v. Lake Havasu City*, 836 F. App'x 554, 556 (9th Cir. 2020). Thus, Mr. Farson's allegations that Judge Kaestner authorized an "illegal search warrant" for his blood after "ensur[ing] that Fiske had properly inserted the 'magic' key words" to establish probable cause, Dkt. No. 1-2 at 4, 36; Dkt.

No. 5-29 at 4, does not suffice to allege an official policy; pervasive practice or custom; failure to train, supervise, or discipline; or decision or act by a final policymaker as the "moving force" of any injury. *See Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019) ("[M]unicipalities may be liable under § 1983 for constitutional injuries pursuant to (1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policy maker.").

Second, the remainder of Mr. Farson's claim consists entirely of conclusory and unadorned accusations. He claims that the "system in place" for issuing warrants "is lacking necessary safeguards, enables fraud, and violates [his] constitutionally protected rights." *Id.* Nowhere, though, does Mr. Farson articulate whose system it is, what safeguards the warrant "system" lacks, or how it violates his constitutional rights. Nor does he identify which constitutional rights have been violated. *See Stevens v. United States Government*, No. C21-0528-JCC, 2021 WL 1575238, at *2 (W.D. Wash. Apr. 22, 2021) ("Plaintiff must clearly identify . . . the constitutional or federal statutory basis for the claim(s) asserted, the specific facts which Plaintiff believes support each claim, and the specific relief requested.").

The Court notes, however, that Judge Kaestner's reliance on absolute judicial immunity is misplaced. *See* Dkt. No. 17 at 6–8. Judges sued in their personal capacity are indeed "absolutely immune from damage liability for acts performed in their official capacities,"[7] no matter how "'erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff.'" *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986) (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 200–201 (1985)).[8] And 42 U.S.C. § 1983 "was not intended to abolish the

---

[7] The Court notes that the complained-of actions by Judge Kaestner were judicial in nature and within her jurisdiction to perform. Wash. Rev. Code § 2.20.030 ("Any district or municipal court judge, in the county in which the offense is alleged to have occurred, may issue a search warrant for any person or evidence located anywhere within the state.").

[8] Contrary to Mr. Farson's arguments, the Constitution and statutes are not the only source of law this Court must

doctrine of judicial immunity." *Id.* But again, because Mr. Farson's claim is against Judge Kaestner in her official capacity, the claim "is *not* [one] against [her] personally, for the real party in interest is the entity." *Graham*, 473 U.S. at 166 (emphasis in original). This is significant because personal immunity defenses, *i.e.*, absolute and qualified immunity, are not available in an official-capacity suit. *Id.* at 166–67 ("The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment." (emphasis in original)); *Monell*, 436 U.S. at 701 ("[M]unicipal bodies sued under § 1983 cannot be entitled to an absolute immunity, lest our decision that such bodies are subject to suit under § 1983 be drained of meaning.") (cleaned up).[9] An official-capacity suit thus turns on whether the plaintiff can establish the entity's liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). *See Graham*, 473 U.S. at 166; *James v. FPI Mgmt., Inc.*, No. C22-0336-JLR, 2022 WL 1499590, at *7 (W.D. Wash. May 11, 2022). Here too, though, Count 17 fails to allege facts that would give rise to *Monell* liability. The Court therefore grants Judge Kaestner's Rule 12(b)(6) motion.

---

abide by. *See, e.g.,* U.S. Const. amend. VII. For example, federal district courts must adhere to precedent from higher courts, including but not limited to precedent on doctrines of absolute immunity. *See, e.g.*, *Fid. Expl. & Prod. Co. v. United States*, 506 F.3d 1182, 1186 (9th Cir. 2007) ("[W]e must follow the Supreme Court precedent that directly controls[.]"); *Imbler v. Pachtman*, 424 U.S. 409, 427 (1976) (The prosecutor has "the same absolute immunity under § 1983 that the prosecutor enjoys at common law."); *Cleavinger*, 474 U.S. at 199 ("Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction," and the Supreme Court has "pronounced and followed this doctrine of the common law for more than a century." (cleaned up)).

[9] The parties have not addressed whether Judge Kaestner is a "person" within the meaning of 42 U.S.C. § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66–71 (1989) (states and their officials are not "persons" under Section 1983 because they retain their immunity under the Eleventh Amendment); *McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 786 (1997) ("[O]ur understanding of the actual function of a governmental official, in a particular area, will necessarily be dependent on the definition of the official's functions under relevant state law."); Wash. Const. art. IV, § 1 ("*The judicial power of the state* shall be vested . . . such inferior courts as the legislature may provide."); *Keenan v. Allan*, 889 F. Supp. 1320, 1363 (E.D. Wash. 1995), *aff'd,* 91 F.3d 1275 (9th Cir. 1996) ("[District court judges] Allan and Whitener–Moberg are officers of the state, not the County."); *Daves v. Dallas Cnty., Texas*, 22 F.4th 522, 532–41 (5th Cir. 2022) (Under Texas law, county and district court judges were acting for state when addressing issue of bail, and thus county could not be held liable under Section 1983 for judges' actions). Given the outcome with respect to this claim, however, the Court need not analyze that unaddressed issue.

Because the Court dismisses Mr. Farson's claim under Rule 12(b)(6), it need not reach Judge Kaestner's separate basis for dismissal under Federal Rule of Civil Procedure 12(b)(5) (insufficient service of process).

2. Leave to Amend

As relevant here, a party may amend its pleading "once as a matter of course" within 21 days after service of a Rule 12(b) motion. Fed. R. Civ. P. 15(a)(1)(B). After this initial 21-day period has expired, however, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The rule instructs district courts to "freely give leave when justice so requires." *Id.* As this language suggests, the standard for leave to amend is "very liberal." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006); *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) ("[T]his policy is to be applied with extreme liberality."). The Court nonetheless considers five factors when determining whether to grant leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether the party has previously amended the complaint. *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014).

Leave to amend is appropriate here. First, the Ninth Circuit has repeatedly emphasized that "[a] district court abuses its discretion by denying leave to amend unless amendment would be futile or the plaintiff has failed to cure the complaint's deficiencies despite repeated opportunities." *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012); *accord Heineke v. Santa Clara Univ.*, 812 F. App'x 644, 645 (9th Cir. 2020); *see also Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) ("In dismissing for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." (cleaned up)). The Court

cannot say that amendment would be futile here. An amendment is futile only when "no set of facts can be proved . . . that would constitute a valid and sufficient claim[.]" *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988), *overruled on other grounds by Iqbal*, 556 U.S. at 662; *accord Puget Soundkeeper All. v. APM Terminals Tacoma LLC*, 545 F. Supp. 3d 893, 896 (W.D. Wash. 2021). Nor has Mr. Farson previously amended his complaint.

As for the remaining three factors—bad faith, undue delay, and prejudice to the opposing party—the Court discerns nothing in the record sufficient to outweigh Rule 15(a)'s strong presumption in favor of leave to amend. *See Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (prejudice to the opposing party "carries the greatest weight" and, absent prejudice or a "strong showing" under the other factors, there is a presumption in favor of granting leave to amend); *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187–88 (9th Cir. 1987) (granting leave to amend did not prejudice opposing party because case was "still at the discovery stage with no trial date pending"). For these reasons, the Court dismisses Count 17 without prejudice and grants Mr. Farson leave to amend his complaint.

**D. Mr. Farson's Motion for Summary Judgment**

Mr. Farson moves for summary judgment on Count 17. Dkt. No. 12. For the reasons discussed in Section II.C, the motion is denied.

**E. Zachor & Thomas' Motion for Judgment on the Pleadings**

To briefly recap, Zachor & Thomas contracted with the City of Lake Stevens to prosecute Mr. Farson's misdemeanor and gross misdemeanor offenses in Marysville Municipal Court. Dkt. No. 22 at 2; Dkt. No. 13 at 5–6; *see Musso-Escude v. Edwards*, 4 P.3d 151, 153–54 (Wash. Ct. App. 2000) (describing similar contractual arrangement between a private prosecutor and the City of Bothell). Mr. Farson asserts four claims against Zachor & Thomas. *See* Dkt. No. 1-2 at 36–46 (Counts 18–21). The Court addresses each of them below.

1. Rule 12(c) Standard

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Judgment on the pleadings is appropriate "when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (cleaned up). This standard is "substantially identical" to Rule 12(b)(6)'s "because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Id.* (internal quotation marks and citation omitted); *Snoqualmie Indian Tribe*, 186 F. Supp. 3d at 1161 ("When a Rule 12(c) motion is used as a vehicle for a Rule 12(b)(6) motion after an answer has been filed, or when it is functionally equivalent to a motion to dismiss for failure to state a claim, the same standard applies to both."). Again, and as particularly relevant here, dismissal for failure to state a claim is proper when there is a lack of a cognizable legal theory or an absence of sufficient facts alleged under a cognizable legal theory. *Shroyer*, 622 F.3d at 1041.

2. Count 18 – Malicious Prosecution

Mr. Farson alleges that Zachor & Thomas twice "conspire[d] to bring Malicious Prosecution charges" against him. Dkt. No. 1-2 at 36–37; *see also* Dkt. No. 05-25. He seeks a $200,000 judgment "plus costs and interest plus triple damages for public humiliation and pain and suffering." *Id.* at 37. This is precisely the type of conclusory "the-defendant unlawfully-harmed-me" accusation that *Iqbal* forbids. 556 U.S. at 678. Mr. Farson also fails to specify in what capacity he is asserting this claim against Zachor & Thomas, and does not indicate whether he brings the malicious prosecution claim under Section 1983 or state law. *See, e.g.*, Dkt. No. 5-25 at 6–8 (citing Missouri law); *see also Moody v. McCullough*, No. 20-5201-RJB, 2021 WL 1376645, at *7–8 (W.D. Wash. Apr. 12, 2021) (discussing when malicious prosecution is cognizable under

Section 1983); *Thompson v. Clark*, 142 S. Ct. 1332, 1337–38 (2022).

To the extent Mr. Farson seeks to hold Zachor & Thomas individually liable under Section 1983 for prosecuting him, his claim fails as a matter of law even if Zachor & Thomas withheld discovery and refused to disclose exculpatory evidence to Mr. Farson, as he claims. Prosecutors enjoy absolute immunity when initiating a prosecution, presenting the State's case, evaluating the evidence assembled by law enforcement, and preparing for trial. *Garmon v. Cnty. of Los Angeles*, 828 F.3d 837, 843 (9th Cir. 2016); *see also Herndon v. Washington*, No. 3:22-CV-05141-RAJ-JRC, 2022 WL 1303178, at *3 (W.D. Wash. May 2, 2022) ("Prosecutorial immunity applies . . . even when the act is 'malicious or dishonest.'" (quoting *Genzler v. Longanbach*, 410 F.3d 630, 637 (9th Cir. 2005))).[10] In addition, a prosecutor's decision to withhold exculpatory material before, during, or after conviction is "an exercise of the prosecutorial function and entitles the prosecutor to absolute immunity from a civil suit for damages." *Broam v. Bogan*, 320 F.3d 1023, 1030 (9th Cir. 2003) (citing *Imbler*, 424 U.S. at 431 n. 34). The same is true for a state law malicious prosecution claim. *See Musso-Escude*, 4 P.3d at 155–59 (Wash. Ct. App. 2000). And this immunity exists whether the prosecutor comes from the private or public ranks. *Filarsky v. Delia*, 566 U.S. 377 (2012); *Powers v. City of Ferguson*, 229 F. Supp. 3d 894, 901 (E.D. Mo. 2017) (compiling cases).

Additionally, if Mr. Farson wishes to sue Zachor & Thomas in its official capacity, he has failed to allege facts sufficient to state a plausible claim against the City of Lake Stevens under *Monell*. *See Horton by Horton*, 915 F.3d at 602–03; *James*, 2022 WL 1499590, at *7–8.[11]

---

[10] Mr. Farson alleges in passing elsewhere in his complaint that Zachor & Thomas "fail[ed]/refuse[d] to deliver the discovery file" to him. Dkt. No. 1-2 at 23.

[11] Here too the parties fail to address whether Zachor & Thomas's conduct was done on behalf of the municipality or on behalf of the state. *See Weiner v. San Diego Cnty.*, 210 F.3d 1025, 1026-27 (9th Cir. 2000); *Altamirano v. Pima, Cnty. of*, No. CV-15-00169-TUC-RM, 2016 WL 11720201, at *4 (D. Ariz. Mar. 2, 2016). Given the outcome with respect to this claim, however, the Court need not analyze that unaddressed issue.

Finally, because Mr. Farson pleaded guilty, Dkt. No. 1-2 at 24, he cannot satisfy a key element of a malicious prosecution claim under both state and federal law: the criminal prosecution must have ended favorably, i.e., without a conviction. *Thompson*, 142 S. Ct. at 1335; *Hanson v. City of Snohomish*, 852 P.2d 295, 298 (Wash. 1993). "[A] guilty plea is not a termination in favor of the accused for purposes of a malicious prosecution claim." *Amigon v. Luzon*, No. 21-CV-02029 (PMH), 2023 WL 316487, at *3 (S.D.N.Y. Jan. 19, 2023) (quoting *Blackwood v. Omorvan*, No. 16-CV-00644, 2019 WL 4600662, at *7 (S.D.N.Y. Sept. 23, 2019)). Instead, "[a] prosecution ends in a conviction for these purposes where a plaintiff has pled guilty to one charge in satisfaction of all against him, even where the guilty plea encompasses only a lesser included charge." *Id.*; *accord Tempest v. Remblad*, No. 120-CV-00523-MSMLDA, 2022 WL 2817865, at *4 (D.R.I. July 19, 2022) ("Because it *is* a conviction, an *Alford* plea does not meet the *Thompson* standard and the plea is fatal to both malicious prosecution claims.").

Because amendment would be futile, the Court dismisses this claim with prejudice. *See James*, 2022 WL 1499590, at *8.[12]

3. Count 19 – Due Process, Public Humiliation, and Pain

Mr. Farson's next claim fares no better. He alleges that, along with several other defendants, Zachor & Thomas "denied [him] 'Due Process' of law and [caused] public humiliation and pain." Dkt. No. 1-2 at 37–38. Mr. Farson seeks $75,000 "plus costs and interest plus triple damages for denial of Due Process and public humiliation and pain and suffering." *Id.* at 39. First, "public humiliation and pain" is not a cognizable legal theory under federal or state law. And as for Mr. Farson's constitutional allegation, passing reference to "due process" is insufficient to state a claim. He must identify the actions that Zachor & Thomas took and articulate how those actions

---

[12] In his "Memorandum: Restatement of Amnesty and Sovereignty," Mr. Farson appears to briefly challenge the absolute immunity of Zachor & Thomas. *See* Dkt. No. 31 at 7. Those arguments fail for the reasons discussed above.

violated due process. *See Stevens*, 2021 WL 1575238, at *2 (a plaintiff must "clearly identify" the constitutional basis for the claim and the "specific facts" he believes support it); *cf. Castillo v. McFadden*, 399 F.3d 993, 1002–03 (9th Cir. 2005) (petitioner's "drive-by citation" to due process clause, "detached from any articulation of an underlying federal legal theory," did not constitute "fairly presenting" that constitutional claim in state court for purposes of exhaustion). And here too, Mr. Farson fails to specify in what capacity he is asserting this claim against Zachor & Thomas. Again, prosecutors sued in their personal capacities have absolute immunity from damage actions for conduct that is intimately associated with the judicial phase of the criminal process. *Imbler,* 424 U.S. at 430. This claim is dismissed with leave to amend.

4. <u>Count 20 – Failure to Keep Oath and Obey State and Federal Constitutions</u>

In Count 20, Mr. Farson accuses Zachor & Thomas (among other defendants) of failing to keep its oath of office, "not obeying the Washington State Constitution . . . and its Codes, . . . not obeying the Constitution of the United States of America[,] and not obeying the Bill of Rights and the Declaration of Independence." Dkt. No. 1-2 at 40. He contends that Zachor & Thomas has "permitted the usurpation of the People's Rights" and "deprived [him] of Liberty and the pursuit of Happiness." *Id.* This time Mr. Farson requests $1,186,360 plus costs and interest. *Id.* at 41. But here too he fails to state a cognizable legal theory or allege sufficient facts to otherwise support a cognizable legal theory. *See Shroyer*, 622 F.3d at 1041. Mr. Farson must explain with sufficient specificity in what capacity he is asserting this claim against Zachor & Thomas, what Zachor & Thomas did that allegedly violated the law, and which provisions of the state or federal constitutions it allegedly violated. This claim is dismissed with leave to amend.

5. <u>Count 21 – Mr. Farson's Daughters and Post-Traumatic Stress Disorder</u>

Mr. Farson's fourth and final claim against Zachor & Thomas likewise fails to allege a plausible claim for relief. Mr. Farson asserts that his two daughters—who were in the car at the

time of his arrest—have had their trust in law enforcement "traumatically betrayed and are striving to return to a place where they can look upon uniformed Police Officers again without a negative reaction or residual Post-Traumatic Stress Disorder." Dkt. No. 1-2 at 42. He seeks a judgment against Zachor & Thomas for $50,000 "plus costs and interest plus triple damages for public humiliation and pain and suffering, to be paid into an account dedicated to the post high school education" of his daughters. *Id.* at 45.

For one, neither of Mr. Farson's daughters is a party to this suit. *See Scheidler v. Avery*, No. C12-5996-RBL, 2015 WL 7294544, at *13 (W.D. Wash. Nov. 17, 2015) (plaintiff lacked standing to pursue claims on behalf of non-parties to suit). Neither of his daughters has signed the complaint or appeared through an attorney. Mr. Farson does not claim to be an attorney and a non-attorney cannot represent other people, including their minor children, in Section 1983 cases. *See Johns v. Cnty. of San Diego*, 114 F.3d 874, 876 (9th Cir. 1997) ("[A] non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child" because "it is not in the interest of minors . . . that they be represented by non-attorneys"). And, in any event, this claim is devoid of any cognizable legal theory under either state or federal law. Mr. Farson must connect the actions of Zachor & Thomas to a harm that he personally suffered, and he must do so through a cognizable legal theory. The Court dismisses this claim with leave to amend only to the extent Mr. Farson seeks to redress a harm that he, as the named plaintiff, suffered because of Zachor & Thomas' conduct. It is otherwise dismissed with prejudice because amendment would be futile.

**F. The Lake Stevens Defendants' Motion to Dismiss**

The Court must address a preliminary issue before turning to the merits of the Lake Stevens Defendants' motion to dismiss. They have attached to their motion Officer Brandon Fiske's affidavit in support of the blood-draw search warrant, the criminal complaints that Zachor & Thomas re-filed against Mr. Farson in December 2019, and the May 2019 Marysville Municipal

Court "Finding and Sentence" forms dismissing the criminal charges without prejudice. Dkt. No. 23 at 2; *see* Dkt. No. 23-1.

1. Consideration of Materials Outside the Pleadings

District courts generally may not consider any material beyond the pleadings when ruling on a Rule 12(b)(6) motion. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001); *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) ("Ordinarily, a court may look only at the face of the complaint to decide a motion to dismiss."). And if the Court does consider "matters outside the pleadings," it must treat the motion to dismiss as a motion for summary judgment and give all parties "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see also Garaux v. Pulley*, 739 F.2d 437, 439–40 (9th Cir. 1984) ("We hold that where the non-moving party is appearing pro se, the notice requirements of Rule 56(c) must be strictly adhered to when a motion to dismiss under Rule 12(b)(6) is converted into one for summary judgment."). Courts therefore "regularly decline to convert a motion to dismiss into one for summary judgment, particularly when the litigation is in the early stages." *Benton*, 2021 WL 764135, at *3.

There are exceptions to this general rule, though. A district court may consider "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice . . . without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). These exceptions are designed to prevent plaintiffs from deliberately omitting documents on which their claims are based in order to survive a motion to dismiss. *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). Here, the Lake Stevens Defendants contend in a passing and conclusory footnote that the Court can consider the attached materials without converting their motion into one for summary judgment. Dkt. No. 23 at 2 n.1. In terms of supporting argument, however, they offer close to nothing. They appear to

suggest that Mr. Farson's complaint incorporates the proffered materials by reference. *See* Dkt. No. 23-1 at 2 (attorney declaration identifying where Mr. Farson allegedly referenced the materials at issue).

The Court disagrees. A document "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Ritchie*, 342 F.3d at 908. The plaintiff's reliance on the document at issue must be "ongoing and substantial." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999), *superseded by statute on other grounds as recognized by In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1146 (9th Cir. 2017); *see also Garner v. Amazon.com, Inc.*, No. C21-0750-RSL, 2022 WL 1443680, at *2 (W.D. Wash. May 6, 2022) ("Mere reference to a document in the complaint is not sufficient[;] rather, the document must be integral to or form the basis of plaintiff's claims."); *Lambert v. McKay*, No. 2:19-CV-1829, 2021 WL 2036702, at *2 (W.D. Wash. May 21, 2021) (materials were incorporated by reference because complaint "repeatedly refer[red]" to them). The Ninth Circuit has distilled the inquiry into a three-part test: (1) the complaint must refer to the document; (2) the document must be central to the plaintiff's claim; and (3) the document's authenticity cannot be disputed by either party. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *accord Segar v. Allstate Fire & Cas. Ins. Co.*, No. C21-1526-JLR, 2022 WL 102035, at *5 (W.D. Wash. Jan. 11, 2022).

Neither Officer Fiske's affidavit nor the municipal court forms pass this test. Mr. Farson's complaint does not make "ongoing," "substantial," or "extensive" reference to these documents, and they do not form the basis of his claims against the Lake Stevens Defendants. Indeed, Mr. Farson's complaint makes a single reference to Officer Fiske's affidavit—and even this sole reference is indirect and fleeting. Dkt. No. 23-1 at 2; *see* Dkt. No. 1-2 at 19 ("Fiske[] then proceeds to fill in a form, with false information, to obtain a search warrant[] to search Mr. Farson's blood

for alcohol. Fiske faxes the form to Judge Kaestner and receives a faxed copy of a warrant to do so." (footnote omitted)). The municipal court forms suffer the same deficiency. These documents indicate that, on May 6, 2019, the prosecution moved to dismiss all charges against Mr. Farson without prejudice. Dkt. No. 23-1 at 15–16. Here again, Mr. Farson's complaint only once references the fact that charges were dismissed. *See* Dkt. No. 1-2 at 23 ("But, instead, at the last minute, the Prosecutor tells the judge he is dismissing the case without prejudice."). And this dismissal is not central to any claim. The Court finds otherwise, however, with respect to the criminal complaints. *See* Dkt. No. 23-1 at 11–13. Because the re-filed charges against Mr. Farson form the basis of his claims, and because he repeatedly references those charges in his complaint and does not dispute the authenticity of the complaints, the Court considers the criminal complaints in ruling on the Lake Stevens Defendants' motion to dismiss.[13]

This does not end the inquiry with respect to Officer Fiske's affidavit and the municipal court forms. The Court must next determine whether judicial notice of the facts in those documents is appropriate. Under Federal Rule of Evidence 201(b), a district court may judicially notice a fact "that is not subject to reasonable dispute[.]" Fed. R. Evid. 201(b). Facts are indisputable, and thus subject to judicial notice, only if they are "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)–(2); *see Ritchie*, 342 F.3d at 909. As for the Marysville Municipal Court "Finding and Sentence" forms, courts routinely take judicial notice of public records, court filings and orders, and dockets in other cases. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record."); *accord Khazali v. Berns*, No. C16-1022-JLR, 2016

[13] For the reasons discussed in the ensuing paragraph, the Court also takes judicial notice of the criminal complaints.

WL 4479915, at *1 n.3 (W.D. Wash. Aug. 24, 2016) (collecting cases). But the same is not true of warrant affidavits and police reports. Although the Court takes judicial notice of the existence of Officer Fiske's affidavit, it declines to take judicial notice of the factual allegations therein. *See Fernandez-Medina v. Olivarez*, No. 3:20-CV-05703-RAJ-JRC, 2022 WL 358407, at *2–3 (W.D. Wash. Jan. 14, 2022) (taking judicial notice of warrant application and affidavit authorizing plaintiff's arrest but declining to take judicial notice of the factual allegations in those documents).

2.  Merits

The Court now turns to the merits of the Lake Stevens Defendants' motion. Dkt. No. 23. The governing standard for Rule 12(b)(6) motions is set forth in Section II.C.1, and the Court declines to regurgitate it here. It will, however, set forth the requirements Mr. Farson must meet to state a claim under 42 U.S.C. § 1983, as many of his claims appear to assert violations of his federal constitutional rights. *See Emmick v. City of Hoquiam*, No. C12-5273-RBL, 2013 WL 6038969, at *1 n.1 (W.D. Wash. Nov. 14, 2013) ("The Court will assume that Emmick seeks to use § 1983 as a vehicle for vindicating the claimed violation of his constitutional rights."). The Court will address state law claims as well.

a.  *Section 1983 Standard*

To state a claim for relief under Section 1983, Mr. Farson must show that (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To satisfy the second prong, he must allege facts showing how individually named defendants caused, or personally participated in causing, the harm alleged in his complaint. *See Arnold v. I.B.M. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981). As with Rule 8(a) pleading standards generally, vague and conclusory allegations of participation in civil rights violations are not sufficient to support a claim under Section 1983. *See Ivey v. Bd. of Regents*, 673

F.2d 266, 268 (9th Cir. 1982).

b. *Count 1 – Right to Travel (Officer Fiske)*

Mr. Farson alleges that Officer Fiske "prevent[ed] [him] from exercising his Right to Travel freely upon the public streets of Lake Stevens." Dkt. No. 1-2 at 26. He seeks a $50,000 judgment against Officer Fiske in his individual and official capacities, "plus costs and interest plus triple damages for public humiliation and pain and suffering." *Id.* at 26–27. But the legal theory to which he alludes in his claim is meritless.

Although "[t]he word 'travel' is not found in the text of the Constitution," *Saenz v. Roe*, 526 U.S. 489, 498 (1999), "[t]he right of interstate travel has repeatedly been recognized as a basic constitutional freedom," *Mem'l Hosp. v. Maricopa Cnty.*, 415 U.S. 250, 254 (1974). Washington courts have also long recognized this right as encompassing intrastate travel. *See, e.g.*, *State v. Smith*, 344 P.3d 1244, 1248 (Wash. Ct. App. 2015); *but see Aitken v. City of Aberdeen*, 393 F. Supp. 3d 1075, 1083 (W.D. Wash. 2019) ("Although some circuits have held that intrastate travel is also protected by the Constitution, the Supreme Court and the Ninth Circuit have declined to weigh in." (internal citation omitted)). But this does not mean a driver is free to violate state law. As the Supreme Court has recognized, "[m]anifestly, a person who has committed an offense against the laws of [a state] may be stopped at its borders and temporarily deprived of his freedom to travel elsewhere within or without the State." *Jones v. Helms*, 452 U.S. 412, 419 (1981). Indeed, there is no fundamental "right to drive," so even when a state completely prevents a motorist from driving by revoking the motorist's license after "repeated[] convict[ions] of traffic offenses," it does not offend the right to travel. *Miller v. Reed*, 176 F.3d 1202, 1206 (9th Cir. 1999) (citing *Dixon v. Love,* 431 U.S. 105, 112–16 (1977)). "The constitutional right to travel is not a right to travel in any manner, without regulation, and does not provide travelers a right to ignore state traffic laws. Therefore, it cannot serve as a reason why [an officer] would not be entitled to

qualified immunity." *Byndon v. Pugh*, 350 F. Supp. 3d 495, 510 (N.D. W. Va. Oct. 4, 2018) (internal citation omitted); *see also Nevada v. Matlean*, No. 3:08-CV-505-BES-VPC, 2009 WL 1810759, at *2 (D. Nev. June 24, 2009) (state laws "do put some restrictions on drivers in that they require them to follow certain rules if they are to enjoy the privilege of driving on public roads and highways," but "such requirements do not impede [the] right to travel.").

Mr. Farson's claim fails against this backdrop. The facts alleged in Mr. Farson's complaint establish that he was driving with a cracked windshield and no license plate. Dkt. No. 1-2 at 6. Both are violations of Washington law, and both provided reasonable suspicion for Officer Fiske to stop his vehicle. *See Whren v. United States*, 517 U.S. 806, 810 (1996) ("[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."); Wash. Rev. Code § 46.16A.030(2) (unlawful to operate vehicle on public highway without displaying valid license plate); *id.* § 46.37.010(1)(a) (driving a vehicle that is "in such unsafe condition as to endanger any person" is a traffic infraction); *State v. Burks*, 56 P.3d 598, 600 (Wash. Ct. App. 2002) (under Section 46.37.010(1), an officer may stop the driver of a vehicle whose windshield is in such unsafe condition as to endanger any person). Even liberally construed, Mr. Farson's assertion that Officer Fiske "prevent[ed] [him] from exercising his Right to Travel freely," Dkt. No. 1-2 at 26, by initiating a traffic stop "because he did not have a valid license plate and had a cracked windshield," *id.* at 6, does not plausibly establish that Officer Fiske unlawfully deprived Plaintiff of his constitutional rights.

The Court dismisses this claim with prejudice because amendment would be futile.

c. *Count 2 – Fourth and Fifth Amendment (Officer Fiske)*

Next, Mr. Farson alleges that Officer Fiske, "lacking Probable Cause, did violate [his] 4th and 5th Amendment Rights to be secure in his person, houses, papers, and effects." Dkt. No. 1-2 at 27. He seeks a $50,000 judgment against Officer Fiske in his official and individual capacities,

"plus costs and interest plus triple damages for public humiliation and pain and suffering." *Id.*

Mr. Farson's Fifth Amendment claim fails as a matter of law because the Fifth Amendment applies only to the federal government and its officials, not local law enforcement. *See Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008); *Santa Ana Police Dep't Officers Ass'n v. City of Santa Ana*, 723 F. App'x 399, 402 (9th Cir. 2018). This portion of his claim is dismissed with prejudice because amendment would be futile.

Mr. Farson's Fourth Amendment claim poses a closer question. Given the facts he alleges in his complaint, *see* Dkt. No. 1-2 at 5–7, 9–12, the Court construes this claim as (1) a challenge to the legality of his arrest for lack of probable cause and/or (2) an excessive force claim.

(1) Legality of Arrest

The Court has little trouble dispensing with the first option. The facts as Mr. Farson alleges them establish that Officer Fiske had probable cause to arrest him for violating at least four Washington laws. *See Torres v. City of Los Angeles*, 548 F.3d 1197, 1207 (9th Cir. 2008) (an arrest is invalid unless probable cause exists under a specific criminal statute). After initiating a valid traffic stop, *see* Wash. Rev. Code §§ 46.16A.030(2), 46.37.010(1)(a), Officer Fiske requested Mr. Farson's license, registration, and proof of insurance. Dkt. No. 1-2 at 6. Mr. Farson failed to produce those documents and instead told Officer Fiske that it was his "God-given unalienable right" to travel, as well as his Fifth Amendment privilege not to incriminate himself. *Id.*; *see* Wash. Rev. Code § 46.61.020(1) (it is unlawful for any person "to refuse upon demand of [a] police officer to produce his or her certificate of license registration of [the] vehicle, his or her insurance identification card, or his or her vehicle driver's license[.]"); *id.* § 46.61.021(3) ("Any person requested to identify himself or herself to a law enforcement officer pursuant to an investigation of a traffic infraction has a duty to identify himself or herself and give his or her current address.").

Mr. Farson also ignored Officer Fiske's repeated commands to leave the vehicle and

continued to protest the validity of the traffic stop. Dkt. No. 1-2 at 10 ("Mr. Farson did not heed Fiske's request to exit the vehicle"; "Mr. Farson asked . . . for Fiske to take a step back and made repeated requests for a supervisor to be called[.]"). Even after Officer Fiske warned Mr. Farson that he would be arrested if he did not exit the vehicle, Mr. Farson failed to cooperate. *Id.* at 10–11. These actions obstructed Officer Fiske's investigation of suspected traffic infractions. *See* Wash. Rev. Code § 9A.76.020(1) ("A person is guilty of obstructing a law enforcement officer if the person willfully hinders, delays, or obstructs any law enforcement officer in the discharge of his or her official powers or duties."); *State v. Contreras*, 92 Wash. App. 307, 317, 966 P.2d 915, 920 (1998) (driver's "disobeying police orders to put his hands up and to exit the vehicle, and giving false information—hindered and delayed the officers' investigation" and were "sufficient to support an arrest for obstructing a law enforcement officer" under § 9A.76.020(1)). And finally, Mr. Farson resisted arrest. *See* Dkt. No. 1-2 at 11 ("Fiske opened Mr. Farson's door and placed his hands upon Mr. Farson and attempted to pull him from the red Ford Ranger. Mr. Farson advised Fiske he was trespassing. Mr. Farson kept asking Fiske for an 'articulable reason' for these actions."); Wash. Rev. Code § 9A.76.040(1) ("A person is guilty of resisting arrest if he or she intentionally prevents or attempts to prevent a peace officer from lawfully arresting him or her.").

Washington law vests police officers with the authority to arrest individuals for misdemeanors and gross misdemeanors without a warrant when the offense is committed in their presence, except for certain circumstances that do not apply here. Wash. Rev. Code § 10.31.100. Each of the above offenses is either a misdemeanor or gross misdemeanor. *See id.* §§ 9A.76.020(3), 9A.76.040(2), 46.61.020(2), 46.61.022. Because the facts as alleged in Mr. Farson's complaint show that Officer Fiske had probable cause to believe that he committed these offenses, his arrest was lawful. *See United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) ("Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to

lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested.”).

(2) Excessive Force

Mr. Farson’s excessive force claim fails as well because Officer Fiske is entitled to qualified immunity.[14] “Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was ‘clearly established’ at the time of the challenged conduct.” *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). While district courts retain discretion to decide which prong of the test to tackle first, the Supreme Court has suggested that the “clearly established” prong is the most efficient starting point. *See id.* The Court heeds that advice here.

“To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority.” *District of Columbia v. Wesby*, 138 S. Ct. 577, 589–90 (2018) (cleaned up). When a rule is merely “suggested” by precedent, it is not clearly established. *Id.* at 590. Rather, “[t]he precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that every reasonable official would know.” *Id.* (cleaned up). “[R]easonableness is judged against the backdrop of the law at the time of the conduct, and a case directly on point is not required, but existing precedent must have placed the statutory or

[14] To be clear, whether Officer Fiske had probable cause to arrest Mr. Farson has no bearing on whether he employed excessive force to make that arrest. *See Mattos v. Agarano*, 661 F.3d 433, 443 n.4 (9th Cir. 2011) (“We need not decide whether the officers had probable cause to effect a custodial arrest pursuant to Washington law because the answer does not affect [plaintiff’s] Fourth Amendment excessive force claim.”); *Beier v. City of Lewiston*, 354 F.3d 1058, 1064 (9th Cir. 2004) (“Because the excessive force and false arrest factual inquiries are distinct, establishing a lack of probable cause to make an arrest does not establish an excessive force claim, and vice-versa.”).

constitutional question beyond debate." *DePaul Indus. v. Miller*, 14 F.4th 1021, 1026–27 (9th Cir. 2021) (cleaned up).[15]

The specificity requirement deserves special emphasis in light of the Supreme Court's repeated reprimands over the years "not to define clearly established law at a highly level of generality." *al-Kidd*, 563 U.S. at 742. And that is especially so "in the Fourth Amendment context, where it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Rivas-Villegas*, 142 S. Ct. at 8 (cleaned up). If this standard seems difficult to meet, that is because it is meant to be. *See City and Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 611 (2015) ("This exacting standard gives government officials breathing room to make reasonable but mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." (cleaned up)). In the end of the day, if a reasonable officer could "miss the connection between [a prior] case and this one," he is entitled to qualified immunity. *City of Tahlequah v. Bond*, 142 S. Ct. 9, 12 (2021).

The Ninth Circuit has observed that "[d]etermining claims of qualified immunity at the motion-to-dismiss stage raises special problems for legal decision making" because it requires district courts to balance somewhat competing standards. *Keates v. Koile*, 883 F.3d 1228, 1234–35 (9th Cir. 2018). On the one hand, the Court may not dismiss a complaint making a claim that is plausible on its face. *Id.* at 1234. But on the other, qualified immunity is a "low bar" for officials to meet and protects all but the plainly incompetent. *Id.* at 1235. The dispositive question at this stage, then, is "whether the complaint alleges sufficient facts, taken as true, to support the claim

[15] Although the Ninth Circuit has repeatedly defined "controlling precedent" to encompass both circuit and Supreme Court authority, *Sharp*, 871 F.3d at 911, and suggested that even "a robust consensus of cases of persuasive authority" can suffice, *Tuuamalemalo v. Greene*, 946 F.3d 471, 477 (9th Cir. 2019), the issue may not be that clear-cut. The Supreme Court has in recent years cast doubt on whether circuit precedent clearly establishes law by evading the question. *See, e.g.*, *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 8 (2021) (per curiam) ("Even assuming that Circuit precedent can clearly establish law for purposes of § 1983, . . . ."); *City and Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 614 (2015) (same); *Carroll v. Carmen*, 574 U.S. 13, 17 (2014) (per curiam) (same).

that the officials' conduct violated clearly established constitutional rights of which a reasonable officer would be aware in light of the specific context of the case." *Id.* (cleaned up). Where "the operative complaint 'contains even one allegation of a harmful act that would constitute a violation of a clearly established constitutional right,' then plaintiffs are 'entitled to go forward' with their claims." *Id.* (quoting *Pelletier v. Fed. Home Loan Bank*, 968 F.2d 865, 872 (9th Cir. 1992)).

To frame things succinctly: the inquiry here is whether a reasonable officer in Fiske's shoes, confronted with the circumstances as Mr. Farson alleges them, would have been on notice in February 2019 that his conduct constituted excessive force. Even viewing the facts in the light most favorable to Mr. Farson, he has failed to provide allegations sufficient to show that Officer Fiske's actions were "*indisputably* unconstitutional." *Brooks v. Clark Cnty.*, 828 F.3d 910, 920 (9th Cir. 2016). Key to this outcome are two closely intertwined principles. First, Mr. Farson bears the burden of showing that the rights allegedly violated were clearly established. *See LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1157 (9th Cir. 2000). And second, that the Court must view the facts in the light most favorable to Mr. Farson at this stage does not mean that it must supply or presume facts not adequately pleaded. *See Ivey*, 673 F.2d at 268 ("[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled."). As the facts currently stand based on the allegations Mr. Farson advances, a reasonable officer in Fiske's shoes "could have believed that the Fourth Amendment permitted him to use the amount of force [Mr. Farson] claims [was] employed, even if the circumstances were exactly as [Mr. Farson] describes." *Brooks*, 828 F.3d at 920.

The Ninth Circuit has recognized for at least a decade now that tasing an adequately restrained suspect or a person only "passively" resisting arrest is unreasonable and therefore violative of the Fourth Amendment. *See Hyde v. City of Willcox*, 23 F.4th 863, 872 (9th Cir. 2022) ("Our cases clearly establish that the use of intermediate force—such as a head restraint or Taser—

on a restrained and non-resistant suspect is unreasonable."); *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1093 (9th Cir. 2013) ("The right to be free from the application of non-trivial force for engaging in mere passive resistance was clearly established prior to 2008."); *Nelson v. City of Davis*, 685 F.3d 867, 881 (9th Cir. 2012) ("In prior cases, we have recognized that a failure to fully or immediately comply with an officer's orders neither rises to the level of active resistance nor justifies the application of a non-trivial amount of force."); *Bryan v. MacPherson*, 630 F.3d 805, 828 (9th Cir. 2010) ("Traffic violations generally will not support the use of a significant level of force."). But this should not be construed as a "clearly established" bright-line prohibition against taser use during non-violent traffic stops. As the Ninth Circuit has observed, "there are no per se rules in the Fourth Amendment excessive force context[.]" *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc). And "[e]ven passive resistance may support the use of some degree of governmental force if necessary to attain compliance depending on the factual circumstances underlying that resistance." *Williamson v. City of Nat'l City*, 23 F.4th 1146, 1153 (9th Cir. 2022) (cleaned up).

When juxtaposed with Mr. Farson's allegations, controlling precedent accentuates the highly fact-specific nature of qualified immunity and demonstrates the importance of case-by-case analysis. *See, e.g.*, *Hyde*, 23 F.4th at 872 (unreasonable for officers to repeatedly tase individual who was not suspected of a serious crime, no longer posed a threat, had been restrained for two minutes, and was no longer capable of resisting); *Jones v. Las Vegas Metro. Police Dep't*, 873 F.3d 1123, 1130–31 (9th Cir. 2017) (officer justified in tasing non-violent suspect during traffic stop in order to subdue him; however, officers thereafter acted unreasonably when they continued to tase suspect "repeated[ly] and simultaneous[ly]" for "over ninety seconds," even while he was being handcuffed, his body was "locked up" prone on the ground, and he was surrounded by multiple officers); *Gravelet-Blondin*, 728 F.3d at 1094 (officer used excessive force when he tased

third-party spectator with no connection to the underlying crime simply because he momentarily failed to move farther than 30 feet away; spectator took no affirmative step to violate the officer's orders, did not physically resist officers, and did not try to interfere with arrest efforts); *Mattos*, 661 F.3d at 444–46 (officers acted unreasonably by tasing pregnant woman after she told them that she was "less than 60 days from her due date," even though she stiffened her body and gripped steering wheel to resist officers' efforts to remove her from vehicle; officers paused after learning she was pregnant to discuss propriety of tasing her, then tased her three times "in rapid succession" over the course of less than one minute); *Bryan*, 630 F.3d at 826–32 (excessive force where officer tased unarmed driver during traffic stop related to seatbelt compliance; driver shouted "gibberish" and "expletives" when he exited the vehicle and was throwing a "bizarre tantrum" while standing twenty feet away).

Mr. Farson's complaint simply fails to provide the details that might overcome a qualified immunity defense. He admits to disregarding Officer Fiske's request for identification and disobeying repeated commands to exit the vehicle. And while it is true that Officer Fiske suspected him of an innocuous crime—a traffic violation—Mr. Farson's complaint establishes that he resisted arrest for some amount of time. Indeed, the sequence of events (again according to Mr. Farson) indicates that he managed to resist long enough for Officer Wells to arrive at the scene and join the struggle. *See* Dkt. No. 1-2 at 11. Exactly how long the struggle lasted—before and after Officer Wells "interjected himself" into the fray—remains unclear from the face of the complaint. It is likewise unclear how active Mr. Farson's resistance was, although the apparent length of the scuffle prior to tasing suggests that he took affirmative steps to resist arrest.

These are the kinds of details that are indispensable to distinguishing excessive force from acceptable force and, more specifically, determining whether binding precedent provides a sufficiently analogous scenario to clearly proscribe the precise constitutional violation that

allegedly occurred. *See Bryan*, 630 F.3d at 830 (because resistance "runs the gamut from the purely passive protestor who simply refuses to stand, to the individual who is physically assaulting the officer," courts must "eschew . . . blanket labels" and instead "evaluate the nature of any resistance in light of the actual facts"); *compare Emmett v. City of Tacoma*, No. C14-5010-BHS, 2015 WL 13546990, at *6 (W.D. Wash. Feb. 24, 2015) (taser use was not excessive force where suspect "repeatedly disobeyed police orders" and "actively resisted arrest" by breaking officer's grip on his arm; suspect also locked his hands behind his head to frustrate arrest efforts), *with Deskins*, 2009 WL 1247067, at *10 (tasing was excessive force where suspect was "at most" delayed in responding to commands; suspect never threatened officers and was tased even after complying with commands).

Mr. Farson's complaint omits several other details critical to overcoming qualified immunity. Nowhere does he specify whether Officer Fiske tased him without warning, and he does not indicate whether the officers had achieved any degree of restraint at the time of tasing. *See Bryan*, 630 F.3d at 831 (officers should generally provide warning); *Armstrong v. Whalen*, 465 F. Supp. 3d 1165, 1172–73 (W.D. Wash. 2020) (officers acted unreasonably by tasing suspect without warning when he did not immediately comply with their command to lay face-down on shattered glass). Here again, the sequence of events as alleged in Mr. Farson's complaint suggests that the officers tased him only after less-significant force was unsuccessful, and before Mr. Farson was restrained in handcuffs. *See* Dkt No. 1-2 at 11–12 ("Wells and Fiske threw Mr. Farson to the ground, tasered him twice, cuffed him, [and] with the weight of both officers on him pushed his face into the asphalt[.]"). Also absent from his complaint is any allegation as to the timing of the tasing, *i.e.*, whether the two shocks were simultaneous, in rapid succession, or spaced out. *See Jones*, 873 F.3d at 1132 ("[C]ontinuous, repeated and simultaneous tasings are different from isolated shocks."); *Mattos*, 661 F.3d at 445 ("Three tasings in such rapid succession provided no

time for Brooks to recover from the extreme pain she experienced, gather herself, and reconsider her refusal to comply."). Mr. Farson similarly makes no attempt to indicate whether he verbally surrendered to officers before the second tasing. *See Hyde*, 24 F.4th at 872 ("Our cases also make it clear that the officers must reassess use of force in an evolving situation as the circumstances change."); *Jones*, 873 F.3d at 1130 ("As the situation evolved, however, the justification for the use of force waned.").

The facts as Mr. Farson alleges them are currently insufficient to strip Officer Fiske of his qualified immunity. And as for suing Officer Fiske in his official capacity, Mr. Farson again falls far short of what is required to state a plausible claim against the City of Lake Stevens under *Monell*. The Court dismisses this claim with leave to amend.

d. *Count 3 – Right to Travel (Officer Wells)*

Mr. Farson levels the same "right to travel" allegations against Officer Wells as he did against Officer Fiske in Count 1. *See* Dkt. No. 1-2 at 27–28. For the reasons stated in Section II.F.2.b., the Court dismisses this claim with prejudice.

e. *Count 4 – Fourth and Fifth Amendment (Officer Wells)*

Mr. Farson advances a Fourth Amendment claim against Officer Wells that is identical to the one he alleges against Officer Fiske. *See id.* at 28–29. The Court dismisses the claim with leave to amend for the reasons stated in Section II.F.2.c. There is, however, one exception to this dismissal. Mr. Farson alleges that after he was tased and placed in handcuffs, the officers "stood him up and shoved him towards Fiske's patrol car." *Id.* at 12. He further claims that Officer Wells "gr[ound] his service boot into [his] shoeless foot." *Id.* When Mr. Farson arrived at the county jail later that evening, his foot was bleeding and road debris had been ground into the wound. *Id.* at 20.

This time the Court begins with the first prong of the qualified immunity test: whether

Officer Wells' actions violated the Fourth Amendment. *al-Kidd*, 563 U.S. at 735. "The Fourth Amendment requires police officers making an arrest to use only an amount of force that is objectively reasonable in light of the circumstances facing them." *Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007). To determine whether the force used was reasonable, the Court considers "(1) the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted, (2) the government's interest in the use of force, and (3) the balance between the gravity of the intrusion on the individual and the government's need for that intrusion." *Lowry v. City of San Diego*, 858 F.3d 1248, 1256 (9th Cir. 2017) (en banc) (cleaned up). Courts are "generally loath to second-guess law enforcement officers' actions in a dangerous situation by analyzing each act without looking at the entire event and considering the officers' mindset amid the uncertainty and chaos." *Hyde*, 23 F.4th at 872; *Graham v. Connor*, 490 U.S. 386, 396–97 (1989) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." (cleaned up)).

As for the severity of the intrusion at issue here, the type and amount of force used by Officer Wells falls somewhere between the "intermediate" level often associated with tasing and take-down maneuvers, *see Hyde*, 23 F.4th at 872; *Rice v. Morehouse*, 989 F.3d 1112, 1121 (9th Cir. 2021), and the "minimal" level, which encompasses "hard pulling and twisting," *Johnson v. Cnty. of Los Angeles*, 340 F.3d 787, 793 (9th Cir. 2003), and baton strikes and jabs, *Felarca v. Birgeneau*, 891 F.3d 809, 817 (9th Cir. 2018); *but see Young v. Cnty. of Los Angeles*, 655 F.3d 1156, 1161 (9th Cir. 2011) (describing pepper spray and baton blows as forms of intermediate force because they are "capable of inflicting significant pain and causing serious injury"). The risk of injury likewise falls somewhere between moderate and low, as grinding one's service boot into another's foot can lead to lacerations (as was the case here), bruising, and perhaps even broken bones, but it does not pose the same degree of danger as, say, tasing or body slamming. Moreover,

the actual injury to Mr. Farson seems minimal. He does not allege long-term issues with his foot, or suggest that he suffered anything beyond a painful cut and road rash. *See Williamson*, 23 F.4th at 1152 ("Consideration of both the actual harm and the risk of harm is important[.]"); *Rice*, 989 F.3d at 1121 (plaintiff alleged that he suffered extreme pain immediately following his arrest and long-term physical pain for which he received medical treatment). The intrusion on Mr. Farson's Fourth Amendment rights was therefore minimal.

The Court next assesses the government's interest in the use of force. To do so, it considers (1) whether the suspect posed an immediate threat to the safety of the officers or others, (2) whether the suspect was actively resisting arrest or attempting to evade arrest by flight, and (3) how severe the crime at issue was. *Est. of Aguirre v. Cnty. of Riverside*, 29 F.4th 624, 628 (9th Cir. 2022) (citing *Graham*, 490 U.S. at 396). The most important of these three sub-considerations is the first—whether the suspect posed an immediate threat to officers or others. *Id*. The Court has no difficulty concluding that the crime at issue—a traffic infraction—was minor. *See Mattos*, 661 F.3d at 444; *Rice*, 989 F.3d at 1123. And by the time Officer Wells allegedly ground his boot into Mr. Farson's foot, he posed little to no threat to the safety of the officers because he had been tased twice and handcuffed. The third sub-consideration is resolved in Mr. Farson's favor for the same reason. Because he was fully restrained, he was no longer actively resisting arrest or attempting to flee the scene. *See Hyde*, 23 F.4th at 872.

Last, the Court balances the gravity of the intrusion against the government's interest in using force. Viewing the facts in the light most favorable to Mr. Farson, Officer Wells' use of force, although rather minimal, outweighed the essentially nonexistent need for that force. Mr. Farson was already fully restrained (for a misdemeanor traffic infraction) when Officer Wells allegedly ground his boot into his shoeless foot. This conduct, if true, violated Mr. Farson's Fourth Amendment rights.

The second prong of the qualified immunity test is likewise satisfied. In the words of the Ninth Circuit, the Court "need look no further than *Graham*'s holding that force is only justified when there is a need for force." *Blankenhorn*, 485 F.3d at 481. This "clear principle" would have put a prudent officer on notice that needlessly grinding his service boot into the foot of a fully restrained and subdued traffic infraction suspect was a violation of that person's Fourth Amendment rights. *Id.* Officer Wells is therefore not entitled to qualified immunity on this portion of Mr. Farson's claim, and the Court denies the Lake Stevens Defendants' motion to dismiss to that extent.[16] *See Keates*, 883 F.3d at 1235 (the operative complaint need only contain one allegation of a harmful act that would constitute a violation of clearly established law).

The Court emphasizes, however, that its decision at the motion-to-dismiss stage "sheds little light on whether the government actors might ultimately be entitled to qualified immunity 'were the case permitted to proceed, at least to the summary judgment stage,' and the court is presented with facts providing context for the challenged actions." *Id.* (quoting *Kwai Fun Wong v. United States*, 373 F.3d 952, 957 (9th Cir. 2004)); *see also Chang v. Vanderwielen*, No. C22-0013-SKV, 2022 WL 2871577, at *11 (W.D. Wash. July 21, 2022) (decision on qualified immunity at motion-to-dismiss stage was premature without more information as to underlying factual circumstances; inviting officer to reassert qualified immunity at summary judgment stage).

f. *Counts 5, 6, and 7 – Defamation (Officers Fiske, Wells, and Summers)*

Mr. Farson's next three claims allege that "on or about February 24, 2019," Officers Fiske, Wells, and Summers "slander[ed] and libelously defame[d]" him. Dkt. No. 1-2 at 29–30. He seeks a $50,000 judgment against each of them in their individual and official capacities "plus costs and interest plus triple damages for public humiliation and pain and suffering." *Id.* at 29–30. Aside

[16] As for Mr. Farson's suit against Officer Wells in his official capacity, Mr. Farson does not allege facts sufficient to state a claim against the City of Lake Stevens under *Monell*.

from the fact that this conclusory and unadorned allegation fails to state a claim, any defamation action is barred by Washington's two-year statute of limitations. *See* Wash. Rev. Code § 4.16.100(1); *Emeson v. Dep't of Corr.*, 376 P.3d 430, 442 (Wash. Ct. App. 2016). More than two years passed between February 2019 (when the claims accrued) and the filing of this suit in February 2022. These claims are dismissed with prejudice because amendment would be futile.

g. *Counts 8, 9, and 10 – Fraud (Officers Fiske, Wells, and Summers)*

Mr. Farson alleges that "on or about February 24, 2019," Officers Fiske, Wells, and Summers "perpetrate[d] fraud upon [him] and the court." Dkt. No. 1-2 at 30–32. He again seeks a $50,000 judgment against each of them in their individual and official capacities. *Id.* at 30–32. In Washington, the elements of fraud include: (1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff. *Adams v. King Cnty.*, 192 P.3d 891, 902 (Wash. 2008). Mr. Farson makes no attempt in his complaint to address any of these elements. His conclusory, one-sentence assertion that the officers committed fraud is thus wholly deficient. It is likewise insufficient to establish a plausible claim against the City of Lake Stevens under *Monell*.

There is more, too. Mr. Farson fails to plead substantial compliance with Washington Revised Code § 4.96.020(2), which requires plaintiffs to first present any claim for damages "against a local government entity, or against any local governmental entity's officers, employees, or volunteers, acting in such capacity" to the entity's appointed agent "within the applicable period of limitations within which an action must be commenced."[17] A claim is not deemed "presented"

[17] This statute and its requirements to do not apply to Section 1983 claims. *See Boston v. Kitsap Cnty.*, 852 F.3d 1182, 1185 (9th Cir. 2017) ("It is . . . well settled that state notice of claim provisions are inapplicable to § 1983 actions.").

until the plaintiff delivers a completed claim form to the agent "in person" or sends the form to the agent or a person designated to accept delivery at the agent's office "by regular mail, registered mail, or certified mail, with return receipt requested[.]" Wash. Rev. Code § 4.96.020(2); *see also id.* § 4.96.020(3)(a) (setting forth the information that a plaintiff must supply in the standard tort claim form). The statute bars all claims against the local government entity and its employees "until sixty calendar days have elapsed after the claim has been first presented to the agent of the governing body thereof." *Id.* § 4.96.020(4); *see Dunn v. City of Seattle*, 420 F. Supp. 3d 1148, 1157 (W.D. Wash. 2019) ("[P]arties [must] present tort claims against local government entities to the entity and then wait 60 days before filing suit."); *Richmond v. Spokane Cnty.*, No. 2:21-CV-00129-SMJ, 2021 WL 4951574, at *2 (E.D. Wash. Oct. 25, 2021) (purpose of statute is to "give governments time to investigate potential claims and to encourage settlement"). The Court dismisses these claims with leave to amend. *Spry v. Pierce Cnty.*, No. C-09-5097 KLS, 2010 WL 254565, at *1 (W.D. Wash. Jan. 19, 2010) ("Failure to comply with the statutory filing requirements requires dismissal of the Plaintiff's state law claims.").

h.    *Counts 11 and 12 – Assault and Battery (Officers Fiske and Wells)*

These claims allege that, on February 24, 2019, Officers Fiske and Wells "assaulted, battered, and injured" Mr. Farson. Dkt. No. 1-2 at 32–33. He seeks a $75,000 judgment against each of them in their individual and official capacities. *Id.* at 32–33. However, any action for assault and battery is barred by Washington's two-year statute of limitations. *See* Wash. Rev. Code § 4.16.100(1); *Boyles v. City of Kennewick*, 813 P.2d 178, 179 (Wash. Ct. App. 1991). The Court dismisses this claim with prejudice because amendment would be futile.

i.    *Counts 13 and 14 – False Arrest and Kidnapping (Officers Fiske and Wells)*

Mr. Farson further alleges that, on February 24, 2019, Officers Fiske and Wells "falsely arrested and kidnapped" him. Dkt. No. 1-2 at 33–34. He seeks a $75,000 judgment against each of

them in their individual and official capacities. *Id.* at 33–34. These claims are also barred under Washington's two-year statute of limitations. *See* Wash. Rev. Code § 4.16.100(1); *State Farm Fire & Cas. Co. v. Justus*, 398 P.3d 1258, 1266 (Wash. Ct. App. 2017). They are accordingly dismissed with prejudice.

j.      *Count 15 – Denial of Medical Treatment (Officer Fiske)*

This claim alleges that Officer Fiske "denied medical treatment for [Mr.] Farson." Dkt. No. 1-2 at 35. Mr. Farson seeks a $50,000 judgment against Officer Fiske in his individual and official capacity. *Id.* Once again, Mr. Farson's resort to a single conclusory sentence is insufficient to state a plausible claim for relief. It appears that he wishes to challenge Officer Fiske's failure to seek out medical treatment pursuant to the alleged recommendation of the paramedics. *See id.* at 19–20 ("Neither before nor after the blood draw, while in the hospital, did Fiske make any effort to have Mr. Farson seen by a physician as the Para Medics [sic] had instructed.").

"Under the Due Process Clause of the Fourteenth Amendment, pretrial detainees have a right to receive medical treatment while in police custody." *Hyde*, 23 F.4th at 873. Officials can therefore "violate the Constitution when they deny, delay, or intentionally interfere with needed medical treatment." *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 679 (9th Cir. 2021) (cleaned up); *see, e.g.*, *Jett v. Penner*, 439 F.3d 1091, 1097–98 (9th Cir. 2006) (doctor knew that inmate's thumb was fractured but failed to ensure that it was set and cast); *Clement v. Gomez*, 298 F.3d 898, 902–05 (9th Cir. 2002) (correctional officers knew that inmates had been exposed to pepper spray but waited four hours before allowing them to shower).

An officer "who is aware that a [detainee] is suffering from a serious acute medical condition violates the Constitution when he stands idly by rather than responding with reasonable diligence to treat the condition." *Sandoval*, 985 F.3d at 680. The Court evaluates these types of claims "under an objective deliberate indifference standard." *Gordon v. Cnty. of Orange*, 888 F.3d

1118, 1124–25 (9th Cir. 2018). The government violates its duty to "provide conditions of reasonable health and safety to people in its custody" when (i) it makes an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the government did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved; and (iv) by not taking such measures, the government caused the plaintiff's injuries. *Roman v. Wolf*, 977 F.3d 935, 943 (9th Cir. 2020). "With respect to the third element, the government's conduct must be objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each particular case." *Id.* (cleaned up).

Mr. Farson does not plausibly allege the above elements. Nothing in his complaint suggests that Officer Fiske knew Mr. Farson was in distress or suffering from a serious acute medical condition. *Hyde*, 23 F.4th at 873. There is nothing indicating that a reasonable officer in Fiske's position would have appreciated a high degree of risk of harm to Mr. Farson. Nor does Mr. Farson identify an injury suffered as a result of Officer Fiske's alleged denial of proper medical treatment. As noted in Section II.F.2.e, Mr. Farson does not allege facts sufficient to establish more than a superficial foot laceration and road rash. This is also insufficient to establish a plausible claim against the City of Lake Stevens under *Monell*. The Court dismisses this claim with leave to amend.

k.    *Count 18 – Malicious Prosecution (Officer Fiske)*

The Court addressed this claim with respect to Zachor & Thomas in Section II.E.2. Again, Mr. Farson cannot establish that his criminal prosecution ended favorably, i.e., without a conviction—a necessary element of a malicious prosecution claim under both state and federal law. *Thompson*, 142 S. Ct. at 1335; *Hanson v. City of Snohomish*, 852 P.2d 295, 298 (Wash. 1993). The Court dismisses this claim with prejudice because amendment would be futile.

l. *Count 19 – Due Process and Public Humiliation (Officers Fiske and Wells, Chief Dyer, Lake Stevens Police Department, and City of Lake Stevens)*

The Court addressed this claim with respect to Zachor & Thomas in Section II.E.3. It now dismisses the claim with respect to the named Lake Stevens Defendants for the same reasons, and again permits Mr. Farson leave to amend. The Court dismisses the Lake Stevens Police Department with prejudice, however, because it is not a legal entity subject to suit. *See, e.g.*, *DiMaio*, 2017 WL 3288177, at *3; *Bradford v. City of Seattle*, 557 F. Supp. 2d 1189, 1207 (W.D. Wash. 2008).[18]

m. *Count 20 – Failure to Keep Oath and Obey State and Federal Constitutions (Officer Fiske, Chief Dyer, Lake Stevens Police Department, and City of Lake Stevens)*

The Court addressed this claim with respect to Zachor & Thomas in Section II.E.4. It now dismisses the claim with respect to the named Lake Stevens Defendants for the same reasons, and again permits Mr. Farson leave to amend. The Court dismisses the Lake Stevens Police Department with prejudice, however, because it is not a legal entity subject to suit. *See, e.g.*, *DiMaio*, 2017 WL 3288177, at *3; *Bradford*, 557 F. Supp. 2d at 1207.[19]

n. *Count 21 – Mr. Farson's Daughters and Post-Traumatic Stress Disorder (Officers Fiske and Wells, Chief Dyer, and City of Lake Stevens)*

The Court addressed this claim with respect to Zachor & Thomas in Section II.E.5. It now dismisses the claim with respect to the named Lake Stevens Defendants for the same reasons, and

[18] The Court exercises its authority to sua sponte dismiss this claim with respect to the Snohomish County Jail, the Snohomish County Sheriff's Office, and Snohomish County. Dkt. No. 1-2 at 37. The Snohomish County Jail and Sheriff's Office are dismissed with prejudice because they are not subject to suit. A plaintiff "must name the county or city itself as a party to the action, and not the particular municipal department or facility where the alleged violation occurred." *McCamey v. Snohomish Cnty. Sheriff's Office*, No. C17-63-JCC-BAT, 2017 WL 1504234, at *2 (W.D. Wash. Mar. 29, 2017), *report and recommendation adopted*, 2017 WL 1496437 (W.D. Wash. Apr. 25, 2017). Mr. Farson also fails to provide facts sufficient to establish *Monell* liability against Snohomish County, but the Court permits him leave to amend this portion of the claim.

[19] The Court again exercises its authority to sua sponte dismiss the Snohomish County Jail and Snohomish County Sheriff's Office with prejudice. Dkt. No. 1-2 at 40; *see DiMaio*, 2017 WL 3288177, at *3. And again, the facts Mr. Farson pleads in his complaint do not establish a plausible claim against Snohomish County under *Monell*. Mr. Farson may amend this claim with respect to Snohomish County.

again permits Mr. Farson leave to amend.[20]

o. *Count 22 – Duplicative Excessive Force Claim (Officer Wells)*

Mr. Farson's final cause of action alleges that Officer Wells "brutalize[d]" him "by using unwarranted extraordinary violence against him." Dkt. No. 1-2 at 46. This is dismissed with prejudice as duplicative of his Fourth Amendment claim under Count 4. *See* Section II.F.2.e.

The Court grants in part and denies in part the Lake Stevens Defendants' motion to dismiss.

**G. Count 16 – Remaining Claim Against County Defendants for Failure to Uphold Oath of Office and Protect Mr. Farson's Rights (Deputy Harris)**

Defendants fail to address this claim because it is against only Deputy Harris in his official capacity, and the County Defendants did not file a motion to dismiss. *See* Dkt. No. 1-2 at 35–36. The Court nonetheless exercises its authority to sua sponte dismiss the claim. *See Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987) ("A trial court may dismiss a claim sua sponte under Fed. R. Civ. P. 12(b)(6). Such a dismissal may be made without notice where the claimant cannot possibly win relief." (citations omitted)). Mr. Farson alleges that, "on or about February 24, 2019," Deputy Harris "fail[ed] to uphold his Oath of Office and failed to protect [Mr. Farson's] Rights[.]" Dkt. No. 1-2 at 35. As with the majority of Mr. Farson's claims, this single, conclusory allegation is insufficient under Rule 8(a). Mr. Farson must "allege facts showing how [the] individually named defendant[] caused, or personally participated in causing, the harm alleged in the complaint." *James*, 2022 WL 1499590, at *4. A broad reference to "Rights" will not do. This is likewise insufficient to establish a plausible claim against Snohomish County under *Monell*. The Court grants Mr. Farson leave to amend this claim.

[20] The Court once again exercises its authority to sua sponte dismiss the Snohomish County Jail with prejudice. Dkt. No. 1-2 at 45; *see DiMaio*, 2017 WL 3288177, at *3. And again, the facts Mr. Farson pleads in his complaint do not establish a plausible claim against Snohomish County under *Monell*. Mr. Farson may amend this claim with respect to Snohomish County.

Finally, the Court dismisses Snohomish County Sheriff Adam Forney from the suit, as no claims are asserted against him. *See generally* Dkt. No. 1-2.

**III. CONCLUSION**

For the foregoing reasons, the Court DENIES Mr. Farson's Objection to Removal and Challenge to Jurisdiction (i.e., motion to remand), Dkt. No. 11; Motion for Summary Judgment, Dkt No. 12; Objection To: Motion for Judgement Remains set for Determination, Dkt. No. 29; Motion to Sanction Forsberg & Umlauf, P.S. and Mark Dietzler, Dkt. Nos. 30, 34; and Memorandum: Restatement of Amnesty and Sovereignty, Dkt. No. 31. It also STRIKES Mr. Farson's Motion for Summary Decision to Remand Case Back to Snohomish Superior Court. Dkt. No. 32.

The Court further GRANTS Judge Kaestner's Request for Dismissal, Dkt. No. 17; GRANTS Zachor & Thomas' Motion for Judgment on the Pleadings, Dkt. No 22; GRANTS IN PART and DENIES IN PART the Lake Stevens Defendants' Motion to Dismiss, Dkt. No. 23; and DISMISSES Mr. Farson's complaint without prejudice, except for a portion of Count 4, which survives dismissal to the extent discussed in Section II.F.2.e. Dkt. No. 1-2. The Court DISMISSES with prejudice Counts 1, 3, 5–7, 11–14, 18, and 22. It also DISMISSES with prejudice portions of Counts 2 and 19–21 in accordance with the above analysis.

Should Mr. Farson wish to file an amended complaint, he must do so within 21 days of the date of this Order. The Court, however, cautions Mr. Farson that it expects compliance with the applicable law and procedural rules, including but not limited to Local Civil Rule 15. *See Muñoz v. United States*, 28 F.4th 973, 978 (9th Cir. 2022) (pro se litigants must adhere to the same procedural requirements as other litigants). Violations of the Local Civil Rules or Federal Rules of Civil Procedure may result in sanctions up to and including dismissal. *See Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995) (per curiam) (failure of pro se litigant to follow procedural rules

justified dismissal of civil rights action). The Court emphasizes that Federal Rule of Civil Procedure 8(a)(2) requires a complaint to be "short and plain." Accordingly, the Court will not accept a complaint like Mr. Farson's first complaint, which incorporates numerous attached motions and "memoranda," cumulatively spanning over 400 pages. *See* Dkt. Nos. 1-2, 05-3–05-41. "Neither defendants nor the Court are obligated to search through hundreds of pages in order to determine whether a viable cause of action is alleged: the burden of providing 'a short and plain statement of the claim showing that the pleader is entitled to relief' falls squarely on plaintiff. *Wilder v. United States*, No. C21-0206RSL, 2021 WL 2404318, at *1 (W.D. Wash. May 4, 2021), *appeal dismissed,* No. 21-35445, 2021 WL 5968720 (9th Cir. Sept. 15, 2021).

The Clerk is directed to send uncertified copies of this Order to Mr. Farson at his last known address.

Dated this 3rd day of February, 2023.

Lauren King
United States District Judge