UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DAVID MERRITT FARSON, | CASE NO. 22-CV-00405-LK |
| Plaintiff, | ORDER OF DISMISSAL |
| v. | |
| CITY OF LAKE STEVENS, et al., | |
| Defendants. | |

This matter comes before the Court on pro se Plaintiff David Merritt Farson's "Response To: Order Striking Filings and Directing Plaintiff to Show Cause." Dkt. No. 45. Instead of showing cause why he should not be sanctioned, Mr. Farson shows the opposite: among other things, he again purports to void orders of this Court, pretends to issue orders from an imagined court, and continues to attempt to relitigate (and issue orders regarding) his unsuccessful motion to remand. *See, e.g.*, *id.* at 10–15, 17. The Court has repeatedly admonished Mr. Farson (under threat of serious sanctions, including dismissal with prejudice) not to file these types of vexatious documents—warnings that he has repeatedly elected to disregard. This action is accordingly dismissed with prejudice.

ORDER OF DISMISSAL - 1

## I.   BACKGROUND

Mr. Farson initiated this suit in Snohomish County Superior Court. He alleged 22 claims against Snohomish County, the City of Lake Stevens, and several local governmental entities and officials in connection with his February 2019 arrest, ensuing jail stint, and, ultimately, state convictions for DUI, failing to identify himself to a law officer, and resisting arrest. *See generally* Dkt. No. 1-2; Dkt. No. 35 at 2–4 (previous order summarizing factual background). The Defendants timely removed the case to federal district court. Dkt. No. 1. Mr. Farson then filed a document titled "Objection to Removal & Challenge to Jurisdiction, Dkt. No. 11, which the Court construed as a motion to remand, Dkt. No. 35 at 6. This filing is replete with what would eventually become the hallmark of Mr. Farson's submissions: references to "common law courts of record" and "inferior courts"; demands that Defendants (or the Court) produce "express exceptions" to the United States Constitution and Washington State Constitution; and assertions about the "GOD given Sovereignty of We the People." *See generally* Dkt. No. 11.

Defendants moved to dismiss or otherwise sought judgment on Mr. Farson's claims on various grounds. *See* Dkt. No. 17 (Judge Kaestner's cross-motion for summary judgment); Dkt. No. 22 (Zachor & Thomas' motion for judgment on the pleadings); Dkt. No. 23 (City Defendants' motion to dismiss). Before the Court could rule on those motions, Mr. Farson peppered the docket with a series of submissions parroting his previous jurisdictional arguments and assertions about sovereignty and common law courts of record. *See* Dkt. Nos. 29–32, 34. The Court either denied or struck these filings. In its February 3, 2023 Order Regarding Pending Motions, the Court rejected Mr. Farson's jurisdictional arguments and concluded that Defendants properly removed this action to federal court. *See* Dkt. No. 35 at 6–9 & n.6. It also thoroughly evaluated the legal sufficiency of each of Mr. Farson's claims. *See id.* at 10–45. The Court need not recount the details; it suffices here to note that only one of Mr. Farson's claims (Count 4, Fourth Amendment excessive

force against Officer Wells) survived dismissal. *Id.* at 35–38, 45. The Court, however, granted Mr. Farson leave to file an amended complaint within 21 days. *Id.* at 45. And it cautioned Mr. Farson that he must strictly comply with the applicable law and procedural rules. *Id.* ("Violations of the Local Civil Rules or Federal Rules of Civil Procedure may result in sanctions up to and including dismissal.").

Mr. Farson did not amend his complaint. Instead, he filed a document titled "Writ of Error Quae Corum Nobis Residant." Dkt. No. 36. There Mr. Farson reiterated his position that the Court's jurisdiction "has not been proven" and suggested that the Court has, to use his words, proceeded "in secret" and "without notice or concurrence of the parties," acted as a "loose cannon," "functioned as a military tribunal," and "imposed [its] own rules[.]" *Id.* at 1–3; *see also id.* at 4 (accusing the Court of "refusing to recognize the Sovereignty of the People" and "conspir[ing] en masse with the Defendants"). Mr. Farson then proceeded to outline the characteristics of a "Court of Record" and, purporting to act as "the Court of Record" in this case, authored a fake order (a "writ of error quae corum nobis residant") rescinding the Court's February 3, 2023 Order Regarding Pending Motions and remanding the case to Snohomish County Superior Court. *Id.* at 3–6. Mr. Farson also granted himself leave to file an amended complaint by June 16, 2023. *Id.* at 6.

The Court construed the first portion of Mr. Farson's submission as a motion for reconsideration and denied it. Dkt. No. 37 at 2. As for the second half of the filing, the Court struck it as "a 'fake order from an imagined court.'" *Id.* (quoting *Benson v. Nevada*, No. 2:17-CV-00447-RFB-NJK, 2017 WL 4776760, at *3 (D. Nev. Oct. 23, 2017)). Mr. Farson was likewise cautioned that "[f]urther vexatious behavior w[ould] result in sanctions in accordance with applicable law, including but not limited to Rule 11 of the Federal Rules of Civil Procedure and Local Civil Rule 11." *Id.* And because Mr. Farson failed to file an amended complaint, the Court instructed him that

ORDER OF DISMISSAL - 3

he could proceed only on his excessive force claim against Officer Wells. *Id.* at 3. Mr. Farson was again reminded that failure to strictly comply with Court orders and rules could "result in sanctions up to and including dismissal." *Id.*

The Court thereafter set deadlines for the parties' Rule 26(f) conference, Rule 26(a) initial disclosures, and Rule 26(f) combined joint status report and discovery plan. Dkt. No. 38 at 1. Roughly three weeks later, on March 25, 2023, Mr. Farson submitted a flurry of filings comprised of jurisdictional arguments and proclamations about sovereignty. *See* Dkt. No. 39 (second "writ of error quae corum nobis residant" purporting to rescind the Court's prior orders and remand the case); Dkt. No. 40 (a "memorandum of law" cataloguing several concepts, including the "laws of nature and nature's god," "legislative law," "vested law," "Roman law," and "Code of Justinian"); Dkt. No. 41 (another "memorandum of law" discussing several "maxims"); Dkt. No. 42 (yet another "memorandum of law" defining and discussing several terms); Dkt. No. 43 (a "writ quo warranto"). The Court promptly struck these submissions as "meritless and vexatious" and ordered Mr. Farson to show cause why he should not be sanctioned pursuant to Federal Rule of Civil Procedure 11 and Local Civil Rule 11. Dkt. No. 44 at 2. More importantly, however, the Court indicated that it would dismiss this case with prejudice if Mr. Farson (1) failed to timely respond or (2) responded by "filing additional documents or motions related to his sovereign citizenship," including but not limited to submissions like Docket Numbers 39, 40, 41, 42, and 43. *Id.*

Mr. Farson again ignored the Court's directive. His latest filing consists of lengthy reflections on, among other topics, the distinction between a "court of record" and an "inferior court," sovereign rights, "[t]he People's Rights," and the judicial oath of office. *See* Dkt. No. 45 at 4–13.[1] As with previous filings, Mr. Farson's submission challenges the Court's jurisdiction

---

[1] Mr. Farson denies that he is "a student . . . []or a practitioner of some errant Sovereign Citizen Movement," and

ORDER OF DISMISSAL - 4

based on his belief that the Court is not a "court of record." *See id.* at 13 ("Plaintiff Farson re-states his challenge to the jurisdiction of this Court of limited jurisdiction NOT of Record."). He purports to void the Court's March 27, 2023 Order and reinstate the stricken documents (Dkt. Nos. 39–43), then demands that the Court remand the case to Snohomish County Superior Court. *Id.* at 14, 17.

## II.   DISCUSSION

Federal Rule of Civil Procedure 41(b) permits the Court to sua sponte dismiss a plaintiff's case when he fails to comply with a Court order. *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 689 (9th Cir. 2005). Dismissal is likewise available as a sanction pursuant to the Court's inherent power to control its docket. *Thompson v. Hous. Auth. of City of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986) (per curiam); *accord Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991) (a "primary aspect" of the district court's inherent authority "is the ability to fashion an appropriate sanction for conduct which abuses the judicial process," including "outright dismissal of a lawsuit"). Such a harsh sanction is, however, reserved for "extreme circumstances." *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986); *see Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (dismissal is available "when a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings" or has "willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." (cleaned up)). This case presents such circumstances.

A district court must weigh five factors in deciding whether to dismiss a case for failure to comply with a court order: (1) the public's interest in expeditious resolution of litigation; (2) the district court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public

---

instead claims to be "an amateur student of the Constitutions of the United States and the State of Washington." Dkt. No. 45 at 4. However, much of Mr. Farson's submissions appear to be copied verbatim from sovereign citizen materials posted online. *Compare, e.g.*, "Memorandum Soverignty," https://tinyurl.com/2p99dx6b, *with* Dkt. No. 5-14 ("Memorandum Sovereignty").

ORDER OF DISMISSAL - 5

policy favoring disposition of cases on their merits; and (5) the availability of less severe sanctions. *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1226 (9th Cir. 2006); *accord Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130 (9th Cir. 1987).[2] The first two factors "nearly always" tip in favor of dismissal, while the fourth "generally cuts against" it. *Spesock v. U.S. Bank, NA*, No. C18-0092-JLR, 2018 WL 5825439, at *3 (W.D. Wash. Nov. 7, 2018). The decisive factors for the Court's consideration, then, are risk of prejudice and availability of lesser sanctions. *Id.* The Ninth Circuit has expressly approved dismissal when "at least four factors support dismissal" or "three factors 'strongly' support dismissal[.]" *Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir. 1998) (quoting *Ferdik v. Bonzelet*, 963 F.2d 1258, 1263 (9th Cir. 1992)). However, there is no mathematical formula because the factors are "a way for a district judge to think about what to do, not a series of conditions precedent before the judge can do anything," *Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998). The decision to dismiss under Rule 41(b) is thus ultimately "committed to the discretion of [the] district judge[.]" *Smith v. Legacy Partners, Inc.*, No. 2:21-CV-00629-JHC, 2022 WL 2135369, at *1 (W.D. Wash. June 14, 2022).

A.   **The Public's Interest in Expeditious Resolution of Litigation**

The Ninth Circuit has said that "the public's interest in expeditious resolution of litigation always favors dismissal." *Yourish v. Cal. Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999); *accord Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002). But this factor is not an automatic weight on the scale of dismissal; rather, the Court must still find unreasonable delay. *See Henderson*, 779 F.2d at 1423 (dismissal "must be supported by a showing of unreasonable delay," which "creates a presumption of injury to the defense"); *see also In re Phenylpropanolamine*, 460 F.3d at 1227 ("[D]elay in reaching the merits . . . is costly in money, memory, manageability, and confidence

---

[2] The five-factor test is the same regardless of whether the Court is imposing dismissal as a sanction for lack of prosecution, violation of a court order, or a discovery violation under Rule 37(b)(2).

ORDER OF DISMISSAL - 6

in the process.").

The first factor weighs in favor of dismissal. Although Mr. Farson's behavior has not yet disrupted the case schedule or resulted in lengthy delays, his vexatious submissions have impeded the efficient resolution of his claims in other ways. Judicial resources have been reallocated and expended to address his frivolous motions and memoranda, police his misconduct, and otherwise attempt to ensure his compliance with Court orders and rules. That amounts to unreasonable delay for purposes of the first factor. *See, e.g.*, *Ferdik*, 963 F.2d at 1261 (affirming dismissal where pro se litigant's non-compliance with court orders "consumed large amounts of the court's valuable time that it could have devoted to other major and serious criminal and civil cases on its docket."); *Butcher v. Ward*, No. 2:22-CV-00023-MKD, 2022 WL 3051003, at *5 (E.D. Wash. Aug. 2, 2022) (first factor weighed "heavily" in favor of dismissal where plaintiff repeatedly failed to abide by court orders, leading to "continued exhaustion of valuable Court resources").

Moreover, Mr. Farson's repeated disobedience in the face of multiple warnings evinces a strong likelihood that he will continue to flout the Court's directives and cause delays. He continues to attempt to re-litigate the Court's jurisdiction, issue fake orders purporting to rescind the Court's previous orders, and schedule his own deadlines. Nothing suggests that he intends to constructively participate in this litigation, let alone abide by the Court's orders and applicable law in working towards an expeditious resolution of the case. *See Choi v. LG Elecs. USA, Inc.*, No. 2:22-CV-00494-BJR, 2022 WL 17960618, at *2 (W.D. Wash. Dec. 27, 2022) (first factor weighed "strongly" in favor of dismissal where there was no indication plaintiff "intend[ed] to advance th[e] litigation toward an eventual resolution").

B.   **The Court's Need to Manage Its Docket**

The second factor favors dismissal for the same reasons. *See In re Phenylpropanolamine*, 460 F.3d at 1227 ("This factor is usually reviewed in conjunction with the public's interest in

expeditious resolution and, as with the first factor, we give deference to the district court 'since it knows when its docket may become unmanageable.'" (quoting *In re Eisen*, 31 F.3d 1447, 1452 (9th Cir. 1994))). As explained above, Mr. Farson has ignored each of the Court's previous warnings and clogged the docket with nonsensical, meritless filings aimed at relitigating jurisdiction. Such conduct impedes resolution of not only his case, but other cases involving more diligent litigants who respect and adhere to the Court's rules and orders. Mr. Farson refuses to accept the Court's jurisdiction. Accordingly, the Court cannot afford to burn any more of its scarce resources in a fruitless attempt to convince Mr. Farson otherwise or compel his compliance with basic obligations. *See Pagtalunan*, 291 F.3d at 642 ("It is incumbent upon the Court to manage its docket without being subject to routine noncompliance of litigants[.]"); *Butcher*, 2022 WL 3051003, at *5 ("The pressing caseload in most district courts requires the cooperation of litigants in moving forward so that judicial resources are available to others."). The Court simply lacks the bandwidth to continuously discipline Mr. Farson, patrol the docket for his vexatious submissions, and compel his compliance with the applicable rules all while attempting to ensure that the merits of this case see daylight.

**C.      The Risk of Prejudice to Defendants**

The third factor likewise weighs in favor of dismissal. Prejudice is established when the plaintiff's actions impair the defendant's ability to proceed to trial or threaten to interfere with the rightful decision of the case. *Pagtalunan*, 291 F.3d at 642. Mr. Farson's ongoing misconduct is sure to disrupt discovery and otherwise impair Defendants' ability to prepare a defense and proceed to trial. His propensity for plaguing the docket with memoranda on sovereignty and natural law also threatens to interfere with an expeditious resolution of this case because such filings drain the Court of precious time and resources. He has further sought to override this Court's scheduling orders with his own deadlines, indicating that he has no intent to cooperating with Defendants in

abiding by the case schedule. *See, e.g.*, Dkt. No. 36 at 6 ("Writ of Error Quae Corum Nobis Residant" granting three additional months to amend complaint). Meanwhile, and with every delay, witnesses' memories will fade and evidence may get lost. *See In re Phenylpropanolamine*, 460 F.3d at 1228 ("Prejudice normally consists of loss of evidence and memory; it may also consist of costs or burdens of litigation, although it may not consist of the mere pendency of the lawsuit itself." (internal citation omitted)).

The law also presumes prejudice where, as here, the Court finds unreasonable delay. *Id.* at 1227. Nor can Mr. Farson proffer a non-frivolous excuse for that delay. *Id.* at 1228. As extensively discussed above, his repeated refusal to accept the Court's jurisdiction and attendant disregard for Court orders has no basis in law or fact, and presents a significant risk of prejudice to Defendants.

**D.     The Public Policy Favoring Disposition on the Merits**

The fourth factor generally "counsels strongly against dismissal." *Hernandez*, 138 F.3d at 399. However, district courts must "weigh this factor against the plaintiff's delay and the prejudice suffered by the defendant." *In re Eisen*, 31 F.3d at 1454; *see also Morris v. Morgan Stanley & Co.*, 942 F.2d 648, 652 (9th Cir. 1991) ("Although there is indeed a policy favoring disposition on the merits, it is the responsibility of the moving party to move towards that disposition at a reasonable pace, and to refrain from dilatory and evasive tactics."). The Ninth Circuit has accordingly "recognized that this factor 'lends little support' to a party whose responsibility it is to move a case toward disposition on the merits but whose conduct impedes progress in that direction." *In re Phenylpropanolamine*, 460 F.3d at 1228 (quoting *In re Exxon Valdez*, 102 F.3d 429, 433 (9th Cir. 1996)).

That is the case here. Although Mr. Farson stated an excessive force claim against Officer Wells sufficient to survive dismissal, his refusal to acknowledge the Court's jurisdiction remains an insurmountable impediment to disposition on the merits. Thus, while this factor might otherwise

weigh against dismissal, Mr. Farson's self-sabotaging conduct renders it neutral at best. And this now neutral weight does not offset Mr. Farson's frivolous delay and drain on judicial resources, the Court's need to manage its docket, and the risk of prejudice to Defendants. *See, e.g.*, *In re Eisen*, 31 F.3d at 1454.

### E.  The Availability of Less Severe Sanctions

The fifth and final factor likewise tips towards dismissal. "The district court abuses its discretion if it imposes a sanction of dismissal without first considering the impact of the sanction and the adequacy of less drastic sanctions." *United States v. Nat'l Med. Enters., Inc.*, 792 F.2d 906, 912 (9th Cir. 1986); *see also Raiford v. Pounds*, 640 F.2d 944, 945 (9th Cir. 1981) (per curiam) (a district court must consider less drastic alternatives "[e]specially when a case is still young"). Lesser sanctions include "a warning, a formal reprimand, placing the case at the bottom of the calendar, a fine, the imposition of costs or attorney fees . . . dismissal of the suit unless new counsel is secured, [or] preclusion of claims or defenses. *Malone*, 833 F.2d at 132 n.1 (cleaned up).

The Ninth Circuit uses three factors to assess the adequacy of a district court's exploration of less severe sanctions: "whether the court explicitly discussed alternative sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of dismissal." *Valley Eng'rs*, 158 F.3d at 1057. However, the Court "need not exhaust every sanction short of dismissal before finally dismissing a case[.]" *Henderson*, 779 F.2d at 1424. And the Court is not required to make explicit findings with respect to less severe sanctions when such sanctions (e.g., warnings and reprimands) have proved unsuccessful. *See In re Phenylpropanolamine*, 460 F.3d at 1229; *Malone*, 833 F.2d at 132.

As noted above, the Court first struck a portion of Mr. Farson's motion for reconsideration, cautioned him against further vexatious behavior, and warned it would impose "sanctions in accordance with applicable law, including but not limited to Rule 11 of the Federal Rules of Civil

Procedure and Local Civil Rule 11." Dkt. No. 37 at 2. And yet, Mr. Farson proceeded to docket five more submissions rehashing his jurisdictional arguments and propounding theories about sovereignty. *See* Dkt. Nos. 39–43. The Court then struck those documents, directed Mr. Farson to show cause why Rule 11 sanctions should not be imposed, and issued a final warning: cease with such filings or this case would be dismissed with prejudice. Dkt. No. 44 at 2. This had no effect on Mr. Farson. Even when confronted with an unequivocal threat of dismissal with prejudice, he forged ahead with an 18-page response full of the meritless and rejected theories he was repeatedly admonished not to revive. Dkt. No. 45. The Court has therefore considered lesser sanctions and finds them inadequate. *See Malone*, 833 F.2d at 132 ("[W]arning a plaintiff that failure to obey a court order will result in dismissal can suffice to meet the 'consideration of alternatives' requirement."); *cf. Gergawy v. United States Bakery, Inc.*, No. 2:19-CV-00417-SAB, 2022 WL 395308, at *19 (E.D. Wash. Feb. 8, 2022) (finding that lesser sanctions were unavailable to deter offending party's conduct where party had twice made factual misrepresentations to the Court and had already been admonished under Rule 11).

All this leads to one conclusion: sanctions short of dismissal will not prevent Mr. Farson from continuing to abuse the judicial process. Mr. Farson has been resolute in his contumacious conduct, and should he be permitted to proceed, the Court foresees more of the same jurisdictional haranguing, and with it motions to compel, motions for sanctions stemming from discovery violations, and endless schedule modifications. The Court declines to subject itself and Defendants to that morass. And, as a final matter, it concludes that Mr. Farson's brazen disregard for Court orders supports a finding of bad faith and willfulness deserving of the ultimate sanction. *See Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995) ("For dismissal to be proper, the conduct to be sanctioned must be due to willfulness, fault, or bad faith." (cleaned up)); *McNeal v. Papasan*, 842 F.2d 787, 792 (5th Cir. 1988) (a party's "stubborn resistance to

ORDER OF DISMISSAL - 11

authority" evidences "an obstinate disrespect for the judicial process" that "justifies a dismissal with prejudice" (cleaned up)).

### III.  CONCLUSION

At least four of the five factors counsel in favor of dismissal. *See Hernandez*, 138 F.3d at 399. Accordingly, the Court DISMISSES this case with prejudice. Should Mr. Farson file additional motions, briefs, or memoranda resembling those that are the subject of this Order, the Court will summarily strike them.

Dated this 12th day of April, 2023.

Lauren King
United States District Judge

ORDER OF DISMISSAL - 12